ERIE INSURANCE EXCHANGE, Appellee,

v.

COLONY DEVELOPMENT CORPORATION et al., Appellants.

[Cite as *Erie Ins. Exchange v. Colony Dev. Corp.* (1999), 136 Ohio App.3d 406.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 99AP–329, 99AP–335.

Decided Dec. 23, 1999.

*Bryan L. Jeffries; David J. Hanna,* for appellee.

*Loveland & Brosius,* and *William L. Loveland; Douglas E. Curtis,* for appellant, Colony Development Corp.

*William J. Kepko; Walter W. Reckless,* for appellant, The Ravines at Parkwick Drive Condominium Association.

LAZARUS, Presiding Judge.

This is a consolidated appeal by defendant-appellant, The Ravines at Parkwick Drive Condominium Association (the "Association"), and defendant-appellant, Colony Development Corporation ("Colony"), from the February 23, 1999 judgment entry of the Franklin County Court of Common Pleas granting summary judgment for plaintiff-appellee, Erie Insurance Exchange ("Erie"). The issue is whether the trial court correctly ruled that Erie had no duty to defend or indemnify Colony in an underlying multiclaim action brought by the Association against Colony for damages allegedly arising out of Colony's design, construction and sale of The Ravines at Parkwick Drive Condominium complex. Because the

trial court erred in finding that Erie had no duty to defend Colony in the underlying action, we reverse.

The Association is a not-for-profit corporation created to manage The Ravines at Parkwick Drive Condominium complex. On May 30, 1997, the Association brought a multiclaim action against Colony. The complaint alleges that Colony (by itself, and through agents, partners, subcontractors, servants, and employees) designed and constructed the condominium complex and sold individual units therein. The complaint alleges seven separate claims arising out of Colony's activities, including claims for negligence, breach of express warranty, breach of contract, strict liability, fraudulent concealment, violations of R.C. 5311.26 (requiring certain disclosures in the sale of condominium units in a condominium development), and violations of Ohio's Consumer Sales Practices Act, R.C. 1345.01 *et seq.* The complaint alleges various damages, principally to the condominium units and common areas themselves, but the complaint also alleges damages to the surrounding landscape including death of and damage to major trees, excessive erosion, and excessive accumulation of water. Colony was insured under a comprehensive general commercial liability insurance policy issued by Erie. Colony notified Erie of the Association's action and requested a defense and indemnification.

On September 27, 1997, Erie brought the instant action against Colony and the Association seeking a declaration that it had no duty to defend or indemnify Colony in the underlying action, and Erie's declaratory judgment action was subsequently consolidated with the Association's underlying action.

On March 23, 1998, Erie filed its motion for summary judgment, attaching a copy of the insurance policy. By judgment entry filed February 23, 1999, the trial court granted Erie's summary judgment motion, ruling that Erie had no duty to defend or indemnify under the language of the policy. In particular, the trial court ruled that the Association's allegations of property damage arising out of Colony's design, construction, and sale of the condominium complex did not constitute property damage arising from an "occurrence" as required for coverage under the policy. The trial court also ruled that the Association's claims were excluded from coverage under the policy's "work performed exclusion," "professional services exclusion," and "sistership exclusion." The trial court entered judgment for Erie, stating that there was no just cause for delay.

It is from this judgment entry that both the Association and Colony timely appealed. The Association raises the following four assignments of error:

First Assignment of Error

"The trial court erred in granting summary judgment because there are genuine issues of material fact in determining whether the 'work performed exclusion' applies."

Second Assignment of Error

"The trial court erred in granting summary judgment by implicitly holding that the All Risk Builders Risk Coverage Endorsement did not provide insurance coverage for the causes of action set forth in the underlying complaint."

Third Assignment of Error

"The trial court erred in granting summary judgment because the insurance policy can reasonably be interpreted to provide coverage for the causes of action in the underlying complaint."

Fourth Assignment of Error

"The trial court erred in granting summary judgment because it considered evidentiary material that did not conform to Civ.R. 56(C)."

Colony raises the following five assignments of error:

First Assignment of Error

"A trial court errs when it grants an insuror summary judgment in an insurance coverage dispute by construing the claims of the complaint in the underlying action and interpreting the evidence (only the complaint) narrowly, and solely upon a characterization in favor of the insuror that moved for summary judgment."

Second Assignment of Error

"A trial court errs when it holds, on the face of a complaint and without any examination whatsoever of any evidence, that no insured 'occurrence' took place, particularly where the events at issue include events that do unquestionably qualify as 'occurrences' under a reasonable interpretation of the definition of occurrence contained in the policy."

Third Assignment of Error

"A trial court errs when it excuses an insuror from performing its duty to defend where the insuror fails to meet its burden of demonstrating the absence of any claim that could ultimately prove to be insured against."

Fourth Assignment of Error

"A trial court errs when it holds an insuror immune from a claim (or a duty to defend) under a 'work performed' exclusion, where that exclusion contains an exception that unambiguously applies under the facts of the underlying claim."

Fifth Assignment of Error

"A trial court errs when it summarily grants an insuror immunity from a claim when the decision ignores significant coverages promised by an ambiguous multipart insurance policy."

■ Our review of the decision granting summary judgment is *de novo*. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327, 1328; *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271. A trial court shall grant summary judgment only where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, 942, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 73–74, 375 N.E.2d 46, 47. Here, the trial court ruled that Erie had no duty to defend or indemnify Colony in the underlying action under the terms of the policy as a matter of law.

■ An insurer's duty to defend is separate and distinct from its duty to indemnify. See *W. Lyman Case & Co. v. Natl. City Corp.* (1996), 76 Ohio St.3d 345, 347, 667 N.E.2d 978, 979. "The contractual right to have another party provide a defense in a civil action is by no means 'insignificant' – it is a valuable right, and therefore may very well be sought in contract negotiations, even if it does not come with the further right to obtain indemnification." *Id.* Here, the policy provided as follows: "If anyone we protect is sued for damages covered by this policy, we will defend with a lawyer we choose, even if the allegations are not true."

The law in Ohio is clear regarding an insurer's duty to defend its insured when the policy of insurance, like that at issue here, obligates the insurer to defend a claim covered by the policy, even if the allegations are groundless, false or fraudulent. See, generally, *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118; *Allstate Ins. Co. v. Briggs* (Dec. 16, 1993), Franklin App. No. 93AP–777, unreported, 1993 WL 524880.

■ In *Motorists Mut. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus, the court held:

"The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured."

■ Later, in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, syllabus, the court considered an insurer's duty to defend where the complaint does not clearly bring the matter within the coverage of the policy. The court held:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

■ Thus, where a complaint states a claim that is partially or arguably within policy coverage, the insurer has an absolute duty to assume the defense of the entire action. *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, paragraph one of the syllabus; *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 80, 23 OBR 208, 491 N.E.2d 688. Only if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action. See *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74; *Zanco, Inc. v. Michigan Mut. Ins. Co.* (1984), 11 Ohio St.3d 114, 11 OBR 413, 464 N.E.2d 513. Moreover, once a duty to defend is recognized, speculation about the insurer's ultimate obligation to indemnify is premature until facts excluding coverage are revealed during the defense of the litigation and the insurer timely reserves its rights to deny coverage. See, generally, *Trainor, supra; Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 638 N.E.2d 174. Thus, the relevant inquiry here is limited to whether the Association's allegations in its complaint against Colony state a claim that is potentially or arguably within the policy coverage, thereby requiring Erie to defend Colony in the underlying action.

As noted above, the trial court ruled that Erie had no duty to defend or indemnify Colony, in part because the Association's allegations of property damage arising out of Colony's design, construction, and/or sale of the condominium complex did not allege property damage arising from an "occurrence" as required for coverage under the policy. Appellants challenge the trial court's legal conclusion in this regard.

Under Erie's policy (as in almost all such policies), Erie generally agreed to indemnify Colony for personal injury and property damage caused by an occurrence, unless the injury and damage is otherwise excluded elsewhere in the policy. In particular, the policy provided:

"We will pay for damages because of personal injury or property damage for which the law holds anyone we protect responsible and which are covered by your

policy. We cover only personal injury and property damage which occurs during the policy period. The personal injury or property damage *must be caused by an occurrence* which takes place in the covered territory." (Emphasis added.)

An "occurrence" is defined as "an accident, including continuous or repeated exposure to the same general, harmful conditions."

■ Unlike the trial court, we find that the Association's allegations of property damage caused by Colony's negligence in constructing and designing the condominium complex reasonably fall within the policy's definition of property damage caused by an occurrence,—*i.e.*, an accident. "In its common, ordinary use, the word 'accidental' means unexpected, as well as unintended." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 666, 597 N.E.2d 1096, 1102. Here, the Association's complaint includes allegations that Colony's conduct, by itself or through agents, in constructing and designing the condominium complex was negligent—in other words, fell below the standard of care but nonetheless was not done with the intent or expectation of causing harm. As such, the Association's allegations reasonably fall within the policy's general liability coverage for property damage caused by an occurrence.

■ Erie cites numerous cases for the general proposition that a policy is not a performance bond and, hence, does not cover claims for insufficient or defective work or the repair and replacement of that work. See, *e.g., Zanco, supra; State Auto. Mut. Ins. Co. v. Fairfield Homes, Inc.* (Nov. 14, 1989), Fairfield App. No. 11–CA–89, unreported, 1989 WL 139822; *Akers v. Beacon Ins. Co. of America* (Aug. 31, 1987), Marion App. No. 9–86–16, unreported, 1987 WL 16260. While this general proposition is true, the rationale for the proposition is not that the allegations of negligent construction or design practices do not fall within the broad coverage for property damage caused by an occurrence, but that, as discussed in the balance of this opinion, the damages resulting from such practices are usually excluded from coverage by the standard exclusions found in such policies.

For example, in *Zanco,* a case similar to that at issue here, the Ohio Supreme Court held that the insurer had no duty to defend claims filed against its insured, a condominium builder and developer, alleging that the insured breached its duty to construct the condominiums in a workmanlike manner. The Ohio Supreme Court so held, however, not because the allegations against the insured failed to constitute an occurrence, but because the allegations were specifically excluded from coverage under various exclusions in the policy. In fact, the court specifically stated that a "perfectly credible argument can be made that [the claims] were within these initial provisions for coverage." *Id.* at 115–116, 11 OBR at 415, 464 N.E.2d at 514.

Likewise, in *Fairfield Homes, Inc.*, the court found no coverage for claims of defective construction because of the application of the policy's "insured's product" and "work performed" exclusions. Finally, in *Akers*, the court, while indicating that claims for the costs of repairing a negligently installed roof and skylights were not covered as an occurrence under the policy, also indicated that this conclusion was based, in part, on the unambiguous language of the policy's exclusions.

■ Thus, contrary to Erie's position, Ohio case law indicates that allegations that a building contractor breached its duty to construct or design a building in a workmanlike manner are sufficient to invoke the general coverage provision for property damage caused by an occurrence. See, *e.g.*, *Zanco, supra; Ohio Cas. Ins. Co. v. Joseph Sylvester Constr. Co.* (Sept. 30, 1991), Trumbull App. No. 90–T–4439, unreported, 1991 WL 206628 (allegations that plaintiff suffered damage as a result of insured's failure to properly construct plaintiff's residence were sufficient to make the claim arguably or potentially an occurrence within the policy's definition of that term; claims otherwise excluded under policy exclusions); cf. *Bay Mfg. Co. v. Cincinnati Ins. Co.* (Feb. 5, 1993), Erie App. No. E–92–22, unreported, 1993 WL 24670 (claims for negligent manufacture and design of goods deemed to fall within meaning of occurrence; claims otherwise excluded under policy exclusions). We therefore find that the Association's complaint includes allegations falling within the general provision creating coverage for property damage resulting from an occurrence. The trial court erred in ruling otherwise.

Erie contends, and the trial court found, that even if some of the Association's claims fall within the initial coverage provision of the policy, their claims are otherwise excluded from coverage by operation of the policy's "work performed exclusion," "professional services exclusion," or "sistership exclusion." While we agree that most of the Association's claims would be excluded under one or more of these exclusions, not all of the Association's claims are excluded thereby.

First, the "work performed exclusion," found at Exclusions B.10, provides that liability coverage is excluded as to:

"[P]roperty damage to your work arising out of your work or any portion of it but only with respect to the completed operations hazard.

"This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

■ As noted above, this exclusion in a policy generally operates to ensure that "[d]amage resulting from a contractor's own work usually is excluded as liability insurance should not be a warranty or performance bond for general contractors." *Panzica Constr. Co. v. Ohio Cas. Ins. Co.* (May 16, 1996), Cuya-

hoga App. No. 69444, unreported, 1996 WL 257470. "This is to discourage careless work by making general contractors pay for any losses caused by their own work." *Id.*

The exclusion, however, operates to exclude coverage only for damage to the work of the insured; it does not exclude coverage for collateral damage to other property. See *Joseph Sylvester Constr. Co., supra* (finding no coverage because allegations included no claim of collateral damages); see, *e.g., Akers, supra* (coverage applied to water damage to plaintiff's residence in action against contractor who negligently repaired roof and installed skylights; insurer was obligated to defend contractor); cf. *Buckhorn, Inc. v. Lumbermens Mut. Cas. Co.* (Oct. 13, 1988), Franklin App. No. 88AP–135, unreported, 1988 WL 106624 ("work performed" and "insured's product" exclusions did not apply to collateral damage to floor and ceiling of building when insured's defective shelves were removed).

Here, almost all of the damages alleged by the Association in its complaint against Colony are damages to the work performed by Colony – *i.e.,* damages to the condominium units and common areas constructed and designed by Colony. However, some of the damages alleged in the underlying action do not appear from the complaint to be damages to the condominium units or common areas. In particular, the Association alleges damages to the surrounding landscape, including erosion and death of major trees. It is not clear from the pleadings that those damages are damages to the work performed by Colony.

Moreover, the "work performed exclusion" specifically states that it does not apply "if the damaged work or the work out of which the damage arises was performed on [Colony's] behalf by a subcontractor." Here, the Association specifically alleged that subcontractors performed work on behalf of Colony in the construction, design, and sale of the condominium complex. Therefore, the "work performed exclusion" does not exclude coverage as to these claims. Cf. *Panzica Constr. Co., supra* (work performed by subcontractors is covered in action against general contractor for faulty construction when policy's "work performed exclusion" did not apply to damage caused by the work of subcontractors). While Erie argues that appellants failed to present evidence in response to its motion for summary judgment demonstrating that subcontractors performed such work, Erie's obligation to defend the underlying action is governed by the allegations in pleadings not the existence of such evidence. See *Trainor, supra.* Consequently, appellants were under no obligation to present such evidence in opposition to Erie's motion for summary judgment.

In sum, by alleging collateral damage and by alleging that contractors performed work on Colony's behalf, the Association's complaint states claims that are partially or arguably not excluded by the "work performed exclusion."

Therefore, the "work performed exclusion" does not excuse Erie from defending Colony in the underlying action.

■ The same conclusion applies to Erie's reliance on the "professional services exclusion" found at Exclusions A.7.e. Under this exclusion, liability coverage is excluded as to damages due to:

"[A]ny service of a professional nature, including but not limited to:

"1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and

"2) supervisory, inspection or engineering services."

■ Again, while this exclusion may apply to several of the Association's allegations (*i.e.*, those related to Colony's alleged negligent design of the condominium complex), the exclusion does not apply to those damages resulting from Colony's construction activities, including those performed on its behalf by subcontractors. Construction activities are not professional services. See *Havens & Emerson, Inc. v. Aetna Cas. & Sur. Co.* (May 12, 1994), Cuyahoga App. No. 65507, unreported, 1994 WL 189147 (professional services exclusion applied when allegations limited activity of insured to engineering, design, and other services and failed to allege that insured engaged in the manufacturing or production of an actual product). Therefore, the "professional services exclusion," alone or in connection with the "work performed exclusion," does not exclude all of the Association's claims from coverage under the policy.

Finally, Erie relies on the "sistership exclusion" found at Exclusions B.12. Under this provision, liability coverage is excluded for:

"[D]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, inspection, replacement, recall, repair, adjustment, removal or disposal of:

"a. **your product**;

"b. **your work**; or

"c. **impaired property**;

"if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it."

■ As noted by this court before, "[c]ourts have interpreted this 'sistership' exclusion to require a recall from the market in order for insurance coverage to be excluded." *United Steel Fabricators, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.* (Mar. 11, 1993), Franklin App. No. 92AP–1171, unreported, 1993 WL 69258. When such a recall occurs, damages are excluded by this

provision for the removal from the market of "sister" products to prevent future failures. *Id.* "However, damages claimed for the initial failure would not be excluded." *Id.;* see, also, *All Season Industries, Inc. v. Transamerica Ins. Co.* (Feb. 14, 1985), Franklin App. No. 84AP–980, unreported, 1985 WL 9866 ("exclusion applies to a recall of a product by its manufacturer upon discovery of a defect, as opposed to a buyer's discontinuing his use of a defective product").

 Here, there are no allegations in the Association's complaint indicating that anything (let alone the condominium units or any other condominium units designed and/or constructed by Colony) has been recalled or otherwise withdrawn from the market. Thus, the sistership exclusion does not apply. See *United Steel Fabricators, Inc., supra,* at 11 ("[s]ince no recall was involved in this case, and the product was not withdrawn from the market or from use, the exclusion is not applicable here to exclude the consequential damage in light of the allegations of the Massachusetts complaint").

For the foregoing reasons, we find that the Association's complaint alleges claims that are partially or arguably covered by the policy at issue here. Therefore, Erie had an obligation to defend Colony in the underlying action. The trial court erred in granting summary judgment for Erie. The Association's first and third assignments of error and Colony's first, second, third, and fourth assignments of error are well taken and sustained. Because our resolution of these assignments of error are dispositive of the matter before us, we overrule appellants' remaining assignments of error as moot.

The judgment of the Franklin County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

KENNEDY and TYACK, JJ., concur.