DUBLIN BUILDING SYSTEMS, Appellant,

v.

SELECTIVE INSURANCE COMPANY of [South Carolina], Appellee, et al.

[Cite as *Dublin Bldg. Sys. v. Selective Ins. Co. of South Carolina*, 172 Ohio App.3d 196, 2007-Ohio-494.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–213.

Decided Feb. 6, 2007.

Buckingham, Doolittle & Burroughs, L.L.P., Michael F. Copley, Peter W. Hahn, and Nicole M. Loucks, for appellant.

Brady, Coyle & Schmidt, L.L.P., and Margaret G. Beck; Carroll, McNulty & Kull, L.L.C., Kristin V. Gallagher, Timothy J. Ford, and Gary S. Kull, for appellee Selective Insurance Company of South Carolina.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Dublin Building Systems, appeals from the judgment of the Franklin County Court of Common Pleas denying in part and granting in

part its motion for summary judgment and granting in part and denying in part the summary judgment motion of defendant-appellee, Selective Insurance Company of South Carolina ("Selective"). For the reasons that follow, we reverse.

{¶ 2} From 1997 through June 2000, plaintiff was the general contractor for the construction of several office buildings. Plaintiff retained defendant Reitter Wall Systems ("Reitter") to install stucco and cultured stone on the exterior walls of the buildings.

{¶ 3} In the spring 2002, the building tenants began complaining of musty smells, eye irritation, and other health-related problems. Preliminary investigations revealed that mold had been growing on the inside surface of the exterior walls of the buildings. Plaintiff retained Remedics Restoration to conduct environmental testing to assess the nature and origin of the mold. Remedics obtained mold samples and sent them to Indoor Air Management, Inc. for analysis. Indoor Air determined that mold concentrations inside the buildings were higher than concentrations outside the buildings. Remedics and Indoor Air also found that the mold inside the buildings was hazardous to persons predisposed to mold allergies and respiratory conditions.

{¶ 4} MSI Technical Services, Inc., an expert hired by Reitter's insurance carrier, found that the mold was caused by moisture penetrating through the mortar used to attach the stone masonry to the wall sheathing. MSI also reported that moisture in the wall system and the resulting mold could have been prevented, or greatly reduced, by tooling the exterior surface of the joints or applying a breathable sealer to the exterior of the joint surface. MSI concluded that the mold formed as a result of Reitter's failure to seal the exterior joints of the buildings.

{¶ 5} The mold contamination rendered the buildings uninhabitable; plaintiff was required to remediate and restore the building walls to cure the mold damage. Plaintiff also incurred substantial costs in cleaning the mold from the buildings, relocating tenants from the uninhabitable office space, and conducting environmental testing.

{¶ 6} Plaintiff was insured under a comprehensive commercial general liability insurance policy issued by Selective. The policy contained several exclusions, including, as pertinent here, exclusions for pollution and "business risks." Shortly after the mold was detected, Selective unilaterally added a fungi/bacteria exclusion. Plaintiff notified defendant of the mold problem and eventually sought coverage under the policy. By letter dated January 17, 2003, Selective denied coverage.

{¶ 7} On July 22, 2003, plaintiff filed a complaint against Selective[1] and Reitter. As to Selective, plaintiff sought a declaratory judgment that (1) it was entitled to coverage under the policy for the damages sustained in remediating the mold, (2) no policy exclusions precluded plaintiff's entitlement to coverage for those damages, and (3) Selective failed to perform its contractual obligations under the policy. Against Reitter, plaintiff asserted claims for breach of contract, breach of express warranties, breach of implied warranties, and strict liability. Plaintiff subsequently amended its complaint[2] to add a bad-faith claim against Selective[3] stemming from the denial of coverage.

{¶ 8} Selective submitted a motion for summary judgment,[4] attaching a copy of the insurance policy. Plaintiff also filed a summary judgment motion. The trial court granted in part and denied in part both motions. In particular, the trial court ruled that plaintiff's allegations of property damage arising out of the mold problems did not constitute "property damage" arising from an "occurrence" as required for coverage under the policy. The trial court further determined that plaintiff's claims were not barred by the pollution or fungi/bacteria exclusions, but were precluded by the "business risk" exclusions. The trial court dismissed plaintiff's bad-faith claim because it found there was no coverage under the policy. The trial court entered judgment for Selective, stating there was no just reason for delay.

{¶ 9} Plaintiff timely appeals the trial court's judgment, asserting two assignments of error:

1. The trial court erred in granting summary judgment to Defendant/Appellee Selective Insurance Company of South Carolina by ruling that Plaintiff/Appellant Dublin Building Systems' claims do not fall within the coverage grant of the Selective Policy, as journalized by the trial court's February 3, 2006

---

1. Plaintiff improperly pleaded defendant as "Selective Insurance Company of America."

2. On December 4, 2003, the trial court granted plaintiff's November 6, 2003 motion for leave to file its amended complaint instanter; however, the amended complaint does not appear in the record on appeal. On January 12, 2007, the parties, pursuant to App.R. 9(E), filed a copy of the amended complaint with this court and stipulated that it is a true and accurate copy of the amended complaint filed in the trial court.

3. Plaintiff again improperly pleaded defendant as "Selective Insurance Company of America."

4. Selective submitted a courtesy copy of its motion for summary judgment to the trial court on April 25, 2005, and obtained leave from the court on May 2, 2005, to file such motion; however, the motion was never actually filed with the common pleas court clerk. On August 2, 2006, the parties, pursuant to App.R. 9(E), stipulated to this court that although Selective's motion for summary judgment was never filed with the clerk, the trial court considered and ruled upon the motion. The parties included in the stipulation a complete and accurate copy of the motion and the attachments thereto, including the insurance policy at issue.

Judgment Entry. Because Plaintiff/Appellant Dublin Building Systems' claims are in fact covered by the Selective Policy, this Court should remand Plaintiff/Appellant's bad faith claim for adjudication.

2. The trial court erred in concluding that the "business risk" exclusions contained in the Selective Policy preclude coverage of Plaintiff/Appellant Dublin Building Systems' claims, as journalized in the trial court's August 10, 2005 Decision.

{¶ 10} Appellate review of a decision granting summary judgment is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. A trial court shall grant summary judgment only when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 11} Plaintiff's first assignment of error asserts that the trial court erred in concluding that the property damage resulting from its defective workmanship (through its subcontractor Reitter) did not constitute an insurable "occurrence" under the policy. We agree.

{¶ 12} The policy at issue includes the following pertinent language:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. * * *

* * *

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

{¶ 13} "Property damage" is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

{¶ 14} "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

{¶ 15} This court has determined that an insured's defective workmanship on a construction project constitutes an insurable "occurrence" under a commercial general liability policy. In *Erie Ins. Exchange v. Colony Dev. Corp.* (1999), 136 Ohio App.3d 406, 736 N.E.2d 941, we held that "allegations that a building contractor breached its duty to construct or design a building in a workmanlike manner are sufficient to invoke the general coverage provision for property damage caused by an occurrence." Id. at 415, 736 N.E.2d 941. The policy in *Erie* defined "occurrence" exactly as it is defined in the policy at issue here. This court reasoned that allegations of negligence in constructing or designing a building reasonably fall within the policy's definition of occurrence, that is, accident, because negligent acts are not done with the intent or expectation of causing injury or damage. Id. at 414, 736 N.E.2d 941.

{¶ 16} We reached a similar conclusion in *Natl. Eng. & Contr. Co. v. United States Fid. & Guar. Co.*, Franklin App. No. 03AP–435, 2004-Ohio-2503, 2004 WL 1103993. In that case, we acknowledged that several Ohio appellate courts have concluded that commercial general liability policies with similar coverage language do not insure against claims for defective or negligent workmanship or construction because such claims do not constitute an "occurrence." Id. at ¶ 17. The rationale is that such policies "are intended to insure the risks of an insured causing damage to *other* persons and their property, *not* to insure the risks of an insured causing damage to the insured's own work." (Emphasis sic.) Id. Indeed, we specifically cited many of the cases Selective relies upon in the instant case, e.g., *Environmental Exploration Co. v. Bituminous Fire & Marine Ins. Co.* (Oct. 16, 2000), Stark App. No. 1999CA00315, 2000 WL 1608908 (holding that faulty workmanship does not constitute an accident and since, without an accident, there can be no occurrence as that term is defined in the insurance policy); *Heile v. Herrmann* (1999), 136 Ohio App.3d 351, 736 N.E.2d 566 (holding that faulty workmanship does not constitute an occurrence); and *Royal Plastics, Inc. v. State Auto. Mut. Ins. Co.* (1994), 99 Ohio App.3d 221, 225, 650 N.E.2d 180, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 664, 597 N.E.2d 1096 ("the insurance policy defines 'occurrence' to mean 'an accident.' This language is 'clear and plain, something only a lawyer's ingenuity could make ambiguous' ").

{¶ 17} We rejected that line of cases, instead relying upon the rationale of *Erie*. We also cited several of the cases upon which plaintiff relies in support of its position here: *Hahn's Elec. Co. v. Hartford Cas. Co.*, Franklin App. No. 01AP–1391, 2002-Ohio-5009, 2002 WL 31111850 (stating that the allegations of a contractor's negligent performance of its work and breach of its duty to perform

in a workmanlike manner arguably fall within the policy's coverage for property damage caused by an occurrence); *Zanco, Inc. v. Michigan Mut. Ins. Co.* (1984), 11 Ohio St.3d 114, 11 OBR 413, 464 N.E.2d 513 (stating in dicta that a "perfectly credible argument can be made that the allegations in the * * * counterclaim [for breach of its duty to perform in a workmanlike manner] were within these initial provisions for coverage"); and *Acme Constr. Co., Inc. v. Continental Natl. Indemn. Co.*, Cuyahoga App. No. 81402, 2003-Ohio-434, 2003 WL 194879 (stating that allegations of negligence or defective workmanship regarding a sewer system constituted an occurrence).

{¶ 18} At oral argument in the instant case, Selective conceded that *Erie* and *Natl. Eng.* are virtually indistinguishable from the case at bar. Nonetheless, Selective urges us to abandon our holdings in those cases in favor of the rationale employed in the aforementioned Ohio cases and foreign jurisdictions, e.g., *Weedo v. Stone–E–Brick, Inc.* (1979), 81 N.J. 233, 405 A.2d 788. We decline to do so based upon the doctrine of stare decisis.

{¶ 19} Consequently, based upon our decision in *Erie*, which we followed in *Natl. Eng.*, we hold that plaintiff's allegations of faulty workmanship by its subcontractor, Reitter, are sufficient to invoke the general coverage provision for "property damage" caused by an "occurrence." The trial court erred in finding otherwise.

{¶ 20} Plaintiff also asserts in this assignment of error that the trial court erred in dismissing its bad-faith claim. We defer discussion of this argument pending resolution of the second assignment of error.

{¶ 21} Plaintiff asserts in its second assignment of error that the trial court erred in concluding the "business risk" exclusions preclude coverage under the policy. Again, we agree.

{¶ 22} The policy excludes claims arising out of an insured's so-called "business risks." The applicable sections of the policy state, as follows:

2. Exclusions

This insurance does not apply to:

* * *

j. Damage to Property

"Property damage" to:

* * *

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

{¶ 23} Although the trial court did not address these exclusions individually, it apparently concluded that all of them barred coverage under the policy. Indeed, the court found that "when Plaintiff/Defendant Reitter failed to properly seal the exterior walls [of the office buildings], Plaintiff's work was incorrectly performed and the damage done to the exterior walls was excluded under the plain and unambiguous provisions of the business risk exclusions cited above."

{¶ 24} Plaintiff maintains that the trial court erred in so finding, as none of the exclusions apply. At oral argument, Selective conceded that exclusions j(5), j(6), and l do not bar coverage. Accordingly, the sole issue to resolve is whether exclusion k precludes coverage under the policy. We hold that it does not.

{¶ 25} As noted, exclusion k bars coverage for damage to the insured's "product" arising out of it or any part of it. The policy defines "product" as "[a]ny goods or products, *other than real property*, manufactured, sold, handled, distributed or disposed of by [you]." (Emphasis added.) Plaintiff contends that since its "product" here is real property, i.e., office buildings, exclusion k does not apply.

{¶ 26} In contrast, Selective maintains that "real property" means "land" only and does not include structures affixed upon the land. We note initially that " '[w]here a policy of insurance prepared by an insurer provides generally for a certain coverage, exclusions from such coverage must be expressly provided for or must arise by necessary implication from the words used in the policy.' " *Erie Ins. Exchange v. Colony Dev. Corp.*, Franklin App. No. 02AP–1087, 2003-Ohio-7232, 2003 WL 23096010, at ¶ 36, quoting *Butche v. Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144, 21 O.O.2d 418, 187 N.E.2d 20, paragraph two of the syllabus.

{¶ 27} Moreover, " '[p]olicies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured.' " Id. at ¶ 37, quoting *Butche*, at paragraph three of the syllabus. Further, " '[i]t is not the responsibility of the insured to guess whether certain occurrences will or will not be covered based on nonspecific and generic words or phrases that could be construed in a variety of ways. * * * [I]n order to defeat coverage, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." ' " Id., quoting *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 549, 757 N.E.2d 329, quoting Reiter, Strasser & Pohlman, The Pollution Exclusion Under Ohio Law: Staying the Course (1991), 59 U.Cin.L.Rev. 1165, 1179.

{¶ 28} Selective asserts that there are several recent Ohio and out-of-state decisions that hold that a general contractor/developer's finished structure constitutes its "product" as opposed to "real property" for purposes of applying the business-risk exclusions. In support of its contention, Selective cites several Ohio cases; however, a review of those cases reveals that they are distinguishable from the instant case.

{¶ 29} Unlike the policy at issue here, the policy in *Zanco*, 11 Ohio St.3d 114, 11 OBR 413, 464 N.E.2d 513, did not include an exception for "real property" under the "your product" exclusion. Further, the policy in *Ohio Cas. Ins. Co. v. Joseph Sylvester Constr. Co.* (Sept. 30, 1991), Trumbull App. No. 90–T–4439, 1991 WL 206628, included a special exclusion that precluded claims for property damage to work performed by the insured arising out of materials furnished in connection with the work; Selective's policy does not include such an exclusion. Further, the policy did not include an exception for "real property." *Acme* discussed only a "work performed" exclusion; in addition, *Acme* does not describe "real property" as land only, as defendant contends.

{¶ 30} Moreover, the term "real property" is generally recognized as including both land and the structures affixed thereto. "[R]eal property" is "an estate or property consisting of lands and of all appurtenances to lands, as buildings, crops, or mineral rights." Webster's Encyclopedic Unabridged Dictionary of the English Language (1997) 1196. "Real property" is "[l]and and anything growing on, attached to, or erected on it." Black's Law Dictionary (8th Ed.2004) 1254. Ohio law has defined real property to include buildings attached to land. See, e.g., R.C. 5701.02 (defining "real property" to include "land itself * * * and * * * all buildings, structures, improvements, and fixtures of whatever kind on the land"); *Zell v. Franklin Cty. Bd. of Rev.* (Aug. 26, 1986), Franklin App. No. 86AP–153, 1986 WL 9522 (for tax purposes, real property includes any buildings on the

land). Selective fails to cite any contrary authority. Accordingly, we hold that Selective failed to meet its burden of proving that exclusion k precluded coverage, and the trial court erred in so finding.

{¶ 31} Regarding plaintiff's bad-faith claim, we note that "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 452 N.E.2d 1315. " '[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.' " *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 554, 644 N.E.2d 397, quoting *Staff Builders, Inc. v. Armstrong* (1988), 37 Ohio St.3d 298, 303, 525 N.E.2d 783.

{¶ 32} Here, the trial court dismissed plaintiff's bad-faith claim upon finding that Selective's denial of coverage was reasonable, as plaintiff's claim for property damage due to its defective work was not an insurable event for which defendant should have provided coverage and that the "business risk" exclusions precluded coverage of plaintiff's claims. Having determined that the trial court erred in finding no coverage under the policy, we remand the matter to the trial court for determination of plaintiff's bad-faith claim.

{¶ 33} For the foregoing reasons, we sustain plaintiff's first and second assignments of error. The judgment of the Franklin County Court of Common Pleas is hereby reversed, and the cause is remanded for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed<br>and cause remanded.

PETREE and TRAVIS, JJ., concur.