DECISION AND JUDGMENT
{¶ 1} Appellant, G.L.H., Inc., appeals the judgment of the Erie County Court of Common Pleas, which granted summary judgment to the Cincinnati Insurance Company ("C.I.C.").
 {¶ 2} G.L.H. is the developer, builder, and vendor of "Grand Harbour Condominiums," a 58-unit project in Vermillion, Ohio. On October 20, 2005, Grand Harbour's condominium association filed a three-count complaint against G.L.H. for *Page 2 
breach of implied warranty, negligence, and failure to disclose in violation of R.C. 5311.26, alleging that construction deficiencies caused damages to the units, including, but not limited to, costs of repair and replacement. G.L.H. tendered that lawsuit to C.I.C. for defense and indemnity against the association's claims pursuant to its comprehensive general liability ("CGL") policy and umbrella policy.
 {¶ 3} C.I.C. then filed a declaratory judgment action seeking a declaration that it owed G.L.H. no duty to defend it against the association's claims. The trial court granted C.I.C.'s motion for summary judgment, holding that the association's claims of faulty work did not constitute an "occurrence" under the policies. It further held that, even if the claims did constitute covered occurrences, several exclusions applied.
 {¶ 4} G.L.H. timely appealed and raises one assignment of error for review:
 {¶ 5} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE WHEN UNDERLYING CASE AGAINST APPELLANT POTENTIALLY AND ARGUABLY PRESENTS CLAIMS WITHIN THE POLICY COVERAGE."
 {¶ 6} "The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if `the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, * * * show that there is no genuine issue as to any material fact' and, construing the evidence most strongly in *Page 3 
favor of the non-moving party, reasonable minds can only conclude `that the moving party is entitled to judgment as a matter of law.' (Emphasis added.) Civ. R. 56(C).
 {¶ 7} "A motion for summary judgment first compels the moving party to inform the court of the basis of the motion and to identify portions in the record that demonstrate the absence of a genuine issue of material fact. If the moving party satisfies that burden, the nonmoving party must then produce evidence as to any issue for which that party bears the burden of production at trial. Dresher v. Burt (1996),75 Ohio St.3d 280, 295, limiting Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, paragraph three of the syllabus. An appellate court reviews summary judgments de novo-that is, independently and without deference to the trial court's determination. Brewer v. Cleveland City Schools Bd.of Edn. (1997), 122 Ohio App.3d 378, 383; Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704." Johnson v. Am. Family Ins.,160 Ohio App.3d 392, 2005-Ohio-1776.
 {¶ 8} The scope of the allegations in a complaint against an insured determines whether an insurance company has a duty to defend the insured. Motorists Mut. Ins. Co. v. Trainor (1973), 33 Ohio St.2d 41. If the complaint brings the action within the policy's coverage, the insurer is required to defend its insured regardless of the ultimate outcome of the underlying action. Id. at paragraph two of the syllabus. The duty to defend may also arise subsequent to the filing of the complaint. Willoughby Hills v. Cincinnati Ins. Co. (1984),9 Ohio St.3d 177, 179. If the allegations in the underlying complaint arguably or potentially fall within the liability coverage, the insurer must fulfill its duty to *Page 4 
defend. Id. at 180. "An insurer, however, is not obligated to defend any claim that is clearly and indisputably outside the contracted policy coverage." Cincinnati Ins. Co. v. CPS Holdings, Inc.,115 Ohio St. 3d 306, 2007-Ohio-4917, ¶ 6, citing Preferred Risk Ins. Co. v. Gill (1987),30 Ohio St.3d 108, 113.
 {¶ 9} The Ohio Supreme Court recently summarized the principles applicable to insurance policy interpretation in Cincinnati Ins. Co. v.CPS Holdings, Inc., 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 7-8:
 {¶ 10} "`An insurance policy is a contract whose interpretation is a matter of law.' Sharonville v. Am. Emps. Ins. Co., 109 Ohio St.3d 186,2006-Ohio-2180, ¶ 6. In Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11, we stated, `When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. Hamilton Ins. Serv., Inc. v.Nationwide Ins. Cos. (1999), 86 Ohio St.3d 270, 273, citingEmployers' Liab. Assur. Corp. v. Roehm (1919), 99 Ohio St. 343, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. Kelly v.Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Page 5 
Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. Gulf Ins. Co. v. Burns Motors, Inc. (Tex. 2000),22 S.W.3d 417, 423.
 {¶ 11} "Ambiguity in an insurance contract is construed against the insurer and in favor of the insured. King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus. This rule, however, will not be applied so as to provide an unreasonable interpretation of the words of the policy.Morfoot v. Stake (1963), 174 Ohio St. 506, paragraph one of the syllabus."
 {¶ 12} Both G.L.H and C.I.C. argue whether the suit brought by Grand Harbour's association against G.L.H. constitutes a covered "occurrence" under the CGL policy or umbrella policy. C.I.C. argues that the association's suit only claims damages for costs associated with the repair and/or replacement of G.L.H's workmanship. The CGL policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
 {¶ 13} The association's compliant in the underlying action specifically alleges breach of implied warranty and negligence in connection with the following deficiencies:
 {¶ 14} "failure to construct buildings in accordance with architectural specifications depicted in the construction drawings;
 {¶ 15} "failure to construct building exteriors using plywood sheathing;
 {¶ 16} "installing 1/8" thick `thermo-ply' sheathing in place of plywood without the approval or consent of appropriate governmental regulators/inspectors and/or the designing architect; *Page 6 
 {¶ 17} "failure to construct building exteriors using any vapor barrier;
 {¶ 18} "failure to construct roofs in accordance with industry standards;
 {¶ 19} "failure to install and flash windows in accordance with industry standards;
 {¶ 20} "failure to construct entrance decks in accordance with industry standards."
 {¶ 21} These deficiencies, the association alleges, caused the following damages:
 {¶ 22} "exterior siding that is deteriorated and no longer functions;
 {¶ 23} "exterior siding that is moist, crumbling and/or very brittle;
 {¶ 24} "deteriorated roofs; roofs that are deteriorated and no longer function;
 {¶ 25} "roof shingles with exposed nail heads; roofs with damages shingles;
 {¶ 26} "windows that no longer function to keep out the elements;
 {¶ 27} "entrance decks (walkways) that are unsafe and non-functional due to corroded steel joist hangars and fasteners;
 {¶ 28} "other structural deficiencies."
 {¶ 29} The claim for failure to disclose in violation of R.C. 5311.26
reiterates these allegations and further alleges that G.L.H. intentionally failed to disclose these material facts regarding the structure.
 {¶ 30} In addition to the statement of general coverage for "occurrences," the CGL policy contains several relevant exclusions, including:
 {¶ 31} "j. Damage to Property
 {¶ 32} "`Property damage' to:
 {¶ 33} "* * * *Page 7 
 {¶ 34} "(2) Premises you sell, give away or abandon, if the `property damage' arises out of any part of those premises;
 {¶ 35} "* * *
 {¶ 36} "(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the `property damage' arises out of those operations;
 {¶ 37} "(6) That particular part of any property that must be restored, repaired or replaced because `your work' was incorrectly performed on it."
 {¶ 38} "* * *
 {¶ 39} "Paragraph (2) of this exclusion does not apply if the premises are `your work' and were never occupied, rented or held for rental by you.
 {¶ 40} "* * *
 {¶ 41} "Paragraph (6) of this exclusion does not apply to `property damage' included in the `products-completed operations hazard."
 {¶ 42} "k. Damage to Your Product
 {¶ 43} "`Property damage' to `your product' arising out of it or any part of it.
 {¶ 44} "l. Damage to Your Work
 {¶ 45} "`Property damage' to `your work' arising out of it or any part of it and included in the `products-completed operations hazard'. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *Page 8 
 {¶ 46} "m. Damage to Impaired Property or Property Not Physically Injured
 {¶ 47} "`Property damage' to `impaired property' or property that has not been physically injured, arising out of:
 {¶ 48} "(1) A defect, deficiency, inadequacy or dangerous condition in `your product' or `your work'; or
 {¶ 49} "(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."
 {¶ 50} The CGL policy also contains the following relevant definitions:
 {¶ 51} "19. `Products-completed operations hazard':
 {¶ 52} "a. Includes all `bodily injury' and `property damage' occurring away from premises you own or rent and arising out of `your product' or `your work' except:
 {¶ 53} "(1) Products that are still in your physical possession; or
 {¶ 54} "(2) Work that has not yet been completed or abandoned. However, `your work' will be deemed completed at the earliest of the following times:
 {¶ 55} "(a) When all of the work called for in your contract has been completed; or
 {¶ 56} "(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or
 {¶ 57} "(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. *Page 9 
 {¶ 58} "Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."
 {¶ 59} "* * *
 {¶ 60} "25. `Your product':
 {¶ 61} "a. Means:
 {¶ 62} "(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
 {¶ 63} "(a) You;
 {¶ 64} "* * *
 {¶ 65} "b. Includes:
 {¶ 66} "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your product'; and
 {¶ 67} "(2) The providing of or failure to provide warnings or instructions.
 {¶ 68} "* * *
 {¶ 69} "26. `Your work':
 {¶ 70} "a. Means:
 {¶ 71} "(1) Work or operations performed by you or on your behalf; and
 {¶ 72} "(2) Materials, parts of equipment furnished in connection with such work or operations.
 {¶ 73} "b. Includes: *Page 10 
 {¶ 74} "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work'; and
 {¶ 75} "(2) The providing of or failure to provide warnings or instructions."
 {¶ 76} A conflict currently exists between Ohio appellate districts as to whether allegations of poor workmanship by an insured in construction of real property constitutes an "occurrence" in policies with identical language. This court last addressed this precise issue in WestfieldInsurance Company v. Riehle (1996), 113 Ohio App.3d 249. The CGL policy in Riehle defined "occurrence" identically to the policy sub judice, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." It also contained identical exclusions for property damage to "your work" and identical inclusions and definitions of coverage for "products-completed operations hazard." The plaintiffs in the underlying action had contracted with the insureds, Delton Riehle and Riehle Construction Company, to construct their home. The plaintiffs filed suit against the insureds for breach of implied warranties of habitability and merchantability and alleged negligence in design and construction. Westfield denied coverage to Riehle pursuant to the exclusions.
 {¶ 77} In finding the insurance company had no duty to defend against the plaintiff-buyers' claims, we stated:
 {¶ 78} "Generally, Ohio courts have found that such standard exclusions are intended to insure business risks which are outside of the insured's control, such as accidental injury to persons or property, and not those which are within the control of the *Page 11 
insured, such as the risk of not performing well and the risk of causing personal injury and property damage. * * *
 {¶ 79} "The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured * * * may be liable as a matter of contract law to make good on products or work which is defective * * *. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.' Weedo v. Stone-E-Brick,Inc. (1979), 81 N.J. 233, 238, 405 A.2d 788, 791." Riehl,113 Ohio App.3d at 254-255.
 {¶ 80} Later, this court revisited identical policy language and claims of faulty workmanship in construction against the contractor-insured in Owners Ins. Co. v. Reyes (Sept. 30, 1999), 6th Dist. No. OT-99-017. In Reyes, we shifted away from Riehl. We found that the claims of faulty construction, breach of contract, fraudulent misrepresentation could arguably constitute an "accident," defined as:
 {¶ 81} "a: an unforeseen and unplanned event or circumstance b: lack of intention or necessity: CHANCE 2 A: an unfortunate event resulting esp. from carelessness or ignorance b: an unexpected and medically important bodily event esp. when injurious c: *Page 12 
an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but for which legal relief may be sought. Merriam Webster's Collegiate Dictionary (10 Ed. 1996) 7."
 {¶ 82} Thus, we concluded:
 {¶ 83} "[T]he complaint can be fairly read to encompass a plea for compensation for damages resulting from `an unfortunate event' brought about by `carelessness or ignorance.' In this context, general coverage would accrue. Since a primary rule of construction of insurance contacts is that ambiguities in the policy should be strictly construed against the insurer and liberally in favor of the insured, United States Fid. Guar. Co. v. Lightning Rod Mut, Inc. (1997), 80 Ohio St.3d. 584, 586, we must conclude that the portions of appellants' complaint which constitute damages arising by accident constitute an `occurrence' giving rise to general coverage under the policy."
 {¶ 84} However, Reyes ultimately found the policy did not cover the claims due to the "property damage" definition and the "your work" exclusions.
 {¶ 85} We acknowledge that some Ohio courts have found that allegations of defective workmanship do not constitute "occurrences" in CGL policies, e.g., Heile v. Herrmann (1999), 136 Ohio App.3d 351, 353
(collecting cases). G.L.H., however, urges us to apply the reasoning of the Tenth Appellate District's line of cases on the issue. The tenth district, beginning with Erie Ins. Exchange v. Colony Dev. Corp. (1999),136 Ohio App.3d 406, held that "allegations that a building contractor breached its duty to construct or design a building in a workmanlike manner are sufficient to invoke the *Page 13 
general coverage provision for property damage caused by an occurrence." Id. at 415. Erie reasoned that the alleged negligent acts of the insured were not done with an "intent or expectation of causing harm" and therefore constituted a covered "accident." Id. at 415, citing HybudEquip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657,666 ("In its common, ordinary use, the word `accidental' means unexpected, as well as unintended.").
 {¶ 86} The Tenth Appellate District reaffirmed Erie in Dublin BuildingSystems v. Selective Ins. Co., 172 Ohio App.3d 196, 2007-Ohio-494. InDublin, the insured was a general contractor of office buildings, and building tenants filed claims for property damages arising from mold exposure allegedly caused by faulty construction. After finding that the allegations of faulty construction constituted an "occurrence" under the CGL policy, the court then examined an exclusion for property damage to "your product."
 {¶ 87} The exclusion in Dublin, identical to C.I.C.'s "your product" exclusion, also contained an exception covering damage to "real property." Construing the language against the insurer, Dublin found that "real property" included not only land, but also the buildings which the insured had constructed. Id. at ¶ 30. Dublin also distinguished cases which hold that a general contractor/developer's finished structure constitutes its "product" as opposed to its "real property," because in those cases, the policies at issue did not contain a "real property" exception to the "your product" exclusion. Id. at ¶ 28. *Page 14 
 {¶ 88} Following Reyes, we find that the underlying plaintiffs' claims arguably constitute an "occurrence" and are therefore sufficient to invoke the general coverage provisions of the policy. "An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false, or fraudulent. Sanderson v. Ohio Edison Co. (1994),69 Ohio St.3d 582, paragraph one of the syllabus." Sharonville v. Am.Employers Ins. Co., 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 13. As the underlying claims are arguably and potentially within the scope of coverage, CIC has a duty to defend its insured, G.L.H., unless an exclusion from coverage applies.
 {¶ 89} To reiterate, CIC has a duty to defend unless all claims in the underlying complaint fall "clearly and indisputably outside of the contracted policy coverage." Sharonville, 2006-Ohio-2180, ¶ 13, citingPreferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, 113. "If provisions are susceptible of more than one interpretation, they `will be construed strictly against the insurer and liberally in favor of the insured.' King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus. Additionally, `an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded.' (Emphasis sic.) Hybud Equip. Corp. v. Sphere Drake Ins. Co.,Ltd. (1992), 64 Ohio St.3d 657, 665." Sharonville, 2006-Ohio-2180, ¶ 6.
 {¶ 90} As in Dublin, 172 Ohio App.3d 196, 2007-Ohio-494, CIC's policy sub judice contains an identical exclusion for damage to "your product." CIC's policy also *Page 15 
contains an exception for "real property" to the "your product" exclusion. Following Dublin's reasoning, and strictly construing the language against CIC, the "real property" exception includes buildings which G.L.H. has constructed. As in Dublin, we distinguish those cases holding that a general contractor's finished structure constitutes "product" as opposed to "real property" because those cases do not contain a "real property" exception to the exclusion.
 {¶ 91} Next, under the "Damage to Property" exclusions, section (2) would appear to bar coverage, since G.L.H. is selling the units which it constructs. However, the exclusion does not apply "if the premises are `your work' and were never occupied, rented or held for rental by you." The units are G.L.H.'s "work" and G.L.H. then sold the properties to the association's plaintiff-members. Thus, the "Damage to Property" exclusion, section (2), does not apply.
 {¶ 92} This conclusion is consistent with "Damage to Property," section (5), since that section is written in the present tense and describes "that particular part of property on which you * * * are performing operations * * *." This section must bar coverage for damage to property other than "your work," covered by section (2), i.e., places at which "you" are performing work on someone else's property which isnot "your work."
 {¶ 93} The same conclusion holds for section (6), since that section bars recovery when "your work" is not the property itself, but rather something which was performed on the property. Likewise, section (6) does not apply if the damage is included in the "products-completed operations hazard" coverage. *Page 16 
 {¶ 94} Likewise, the exclusion under paragraph l, "Damage to Your Work," expressly states that the "exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." G.L.H. submitted evidence in its opposition to summary judgment that some of the alleged damage was caused by work performed by subcontractors. Further, this exclusion conflicts with the exclusion for "Damage to Property," section (2), which allows coverage if the "premises" constitute "your work."
 {¶ 95} The "products-completed operations hazard" coverage allows recovery for damage incurred "away from premises you own or rent." C.I.C. cites several cases where the products-completed operations hazard is an exception to coverage. However, here, the products-completed operations clause is not listed as an exception to coverage. Instead, completed products are an exception to the "Property Damage" exclusion, section (6). Moreover, it appears that G.L.H. expressly bargained for products-completed operations coverage: On the CGL policy's declarations page, "INCL PROD AND/OR COMP OP" is listed underneath each insured location.
 {¶ 96} The property damage at issue here concerns premises constituting G.L.H.'s "work" which it "sold" and no longer "owns or rents." The exception to coverage, "products" which are "still in your physical possession" or which are "not yet completed or abandoned" also does not apply, since the association's plaintiff-members have purchased the units. Thus, the units are covered by the "products-completed operations hazard" coverage. *Page 17 
 {¶ 97} Therefore, the units are "your product" since they are real property excepted from exclusion. The units must also fall under the definition of "your work" in order to fit with the definition of "premises" contained in the "Damage to Property" exclusion, section (2).
 {¶ 98} Since policy language is construed against the insurer, "an exclusion in an insurance policy will be interpreted as applyingonly to that which is clearly intended to be excluded." Sharonville v.Am. Employers Ins. Co., 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6, quotingHybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657, 665. C.I.C.'s CGL policy, insuring a developer/builder of real property-condominium units — did not clearly intend to exclude coverage for claims arising out of faulty workmanship on those units. The property damage exclusions make specific exemptions for "premises" which are "your work" and which the insured does not occupy or rent; the "your work" exclusion does not apply if the damaged work or the work out of which the damage arises was performed by a subcontractor and G.L.H. submitted evidence that such work was performed, at least in part, by subcontractors; the property damage exclusions do not apply if the damage is covered by the "products-completed operations hazard" coverage; the units do fall within the products-completed operations hazard coverage and liability coverage is expressly included on the CGL policy's declarations page.
 {¶ 99} Having eliminated each exclusion as applicable to the allegations in the underlying complaint, we find that the allegations arguably or potentially fall within the *Page 18 
CGL policy's liability coverage for property damage. Willoughby Hills v.Cincinnati Ins. Co., 9 Ohio St.3d at 180. Therefore, C.I.C must fulfill its duty to defend G.L.H. in the underlying suit. Id.
 {¶ 100} There being no genuine issue of material fact, the trial court improperly granted summary judgment to CIC. For the foregoing reasons, appellant's assignment of error is well-taken. The judgment of the Erie County Court of Common Pleas is reversed with instructions to enter summary judgment for appellant. Appellee is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT REVERSED.
Mark L. Pietrykowski P.J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1