OPINION
{¶ 1} Plaintiff-appellant, Cincinnati Insurance Company ("CIC"), appeals, and defendant-appellee, Robert W. Setterlin Sons ("Setterlin"), cross-appeals, from a judgment of the Franklin County Court of Common Pleas. The court's judgment concluded CIC has a duty under its general commercial liability and umbrella policies issued to Setterlin to defend Setterlin against a subcontractor's claim that Setterlin is *Page 2 
liable for the subcontractor's increased workers' compensation premiums arising out of an injury Setterlin's negligence caused to the subcontractor's employee. Because the trial court properly concluded CIC has a duty to defend, we affirm that aspect of the trial court's judgment. The trial court, however, did not finally determine the issue raised in Setterlin's cross-appeal, so we dismiss the cross-appeal.
 {¶ 2} In August 2001, Setterlin served as the general contractor, and A.H Sturgill Roof Inc. ("Sturgill") as Setterlin's subcontractor, for a school construction project. While working on the project, a Setterlin employee allegedly instructed the employee of another subcontractor to cut an opening in the roof and install an access door. A Sturgill employee inadvertently walked onto the partially cut area and fell through the roof, allegedly sustaining severe bodily injuries. Sturgill's employee filed a workers' compensation claim, allegedly causing Sturgill's workers' compensation premiums to increase by approximately $400,000 over a four-year period.
 {¶ 3} On August 11, 2003, Sturgill filed a complaint in the Lawrence County Common Pleas Court alleging that Setterlin was liable for the increase in its workers' compensation premiums because Setterlin caused the injuries to Sturgill's employee ("the underlying litigation"). On September 19, 2003, Setterlin tendered defense of the underlying litigation to CIC, its liability and umbrella insurance carrier; CIC denied Setterlin's tender. On June 19, 2005, Setterlin again tendered defense of the underlying litigation to CIC, and on August 8, 2005, CIC accepted Setterlin's tender under a full reservation of rights. CIC then filed a declaratory judgment action in the Franklin County Court of Common Pleas, requesting the court to determine whether, under the policies it *Page 3 
issued to Setterlin, it owed a duty to defend and/or indemnify Setterlin in the underlying litigation.
 {¶ 4} On January 19, 2006, Setterlin filed a motion for summary judgment, maintaining that because the liability and umbrella policies CIC issued to Setterlin at least arguably cover the damages Sturgill claimed, CIC has a duty to defend Setterlin in the underlying litigation. Setterlin also argued it was entitled to attorney fees incurred in defending not only the underlying litigation, but also for defending CIC's declaratory judgment action. On May 18, 2006, CIC filed a memorandum opposing Setterlin's motion, as well as a cross-motion for summary judgment, claiming neither policy covered the underlying litigation because the claims were for purely economic losses that did not result from "bodily injury" or, alternatively, were otherwise precluded under certain policy exclusions.
 {¶ 5} After the parties fully briefed the motions, the trial court on November 15, 2006 granted in part and denied in part Setterlin's motion for summary judgment; it denied CIC's motion for summary judgment. The trial court determined CIC owed Setterlin a duty to defend the underlying litigation, but concluded a determination of CIC's duty to indemnify Setterlin was premature without a finding of liability on the underlying claims. In granting Setterlin's summary judgment motion, the court awarded Setterlin attorney fees for defending itself in the underlying litigation. The court, however, denied Setterlin's summary judgment motion regarding the attorney fees it incurred in defending the declaratory judgment action. The trial court entered judgment accordingly, with a reference to Civ.R. 54. *Page 4 
 {¶ 6} CIC appeals, assigning the following errors:
 FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DENYING THE MOTION FOR SUMMARY JUDGMENT OF CINCINNATI AND IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF SETTERLIN AS IT RELATES TO THE DUTY TO DEFEND UNDER THE PRIMARY POLICY.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DENYING THE MOTION FOR SUMMARY JUDGMENT OF CINCINNATI AND IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF SETTERLIN AS IT RELATES TO THE DUTY TO DEFEND UNDER THE UMBRELLA POLICY.
 {¶ 7} Setterlin cross-appeals, assigning the following error:
 1. The trial court erred in denying Appellee/Cross Appellant an award of attorney fees incurred in defending against the instant declaratory judgment action.
 {¶ 8} When a summary judgment motion disposes of a declaratory judgment action, an appellate court conducts a review under the de novo standard. King v. Western Reserve Group (1997), 125 Ohio App.3d 1, 5. We apply the same standard as the trial court and conduct an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. We must affirm the trial court's judgment if any of the grounds the movant raised in the trial court supports the judgment. Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41-42.
 {¶ 9} Summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a
matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, *Page 5 
reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66.
I. CIC's First and Second Assignments of Error {¶ 10} CIC's first and second assignments of error contend the trial court erred in concluding CIC owed Setterlin a duty to defend under the liability and umbrella policies it issued to Setterlin. The duty to defend is much broader than the duty to indemnify and can be invoked even though no liability ultimately is established. Pilkington N. Am.,Inc. v. Travelers Cas. Sur. Co., 112 Ohio St.3d 482, 2006-Ohio-6551, ¶ 35. The scope of the allegations against an insured determines whether an insurance company has a duty to defend the insured under a liability insurance policy. Id., citing Motorists Mut. Ins. Co. v. Trainor (1973),33 Ohio St.2d 41, paragraph two of the syllabus. The insurer is required to defend when the complaint brings the action within the coverage of the policy. Id.
 {¶ 11} "Where the insurer's duty to defend is not apparent from the pleadings in the action against insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." Willoughby Hills v. Cincinnati Ins. Co. (1984),9 Ohio St.3d 177, syllabus. An insurer thus has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that the insurance policy arguably covers. Sharonville v. Am. Employers Ins.Co., 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 13, citing Sanderson v. OhioEdison Co. (1994), 69 Ohio St.3d 582, at paragraph one of the syllabus. Conversely, an insurer need not defend any action or any claims within the *Page 6 
complaint when all the claims are clearly and indisputably outside of the contracted policy coverage. Id., citing Preferred Risk Ins. Co. v.Gill (1987), 30 Ohio St.3d 108, 113.
 {¶ 12} Sturgill's complaint alleged Setterlin, as the site's general contractor, was responsible for supervising its subcontractor and assuring the installation of the roof access door was performed in a safe manner. Sturgill claimed Setterlin breached that duty because it (1) failed to utilize flags, ropes or any other proper warnings during the roof cutting, (2) failed to provide notice to Sturgill's employees of the roof cutting, (3) failed to adequately instruct its subcontractor on the proper warnings to utilize during the roof cutting, and (4) failed to properly install the access door.
 {¶ 13} Setterlin's allegedly negligent conduct underlay the two claims in Sturgill's complaint that are relevant here. Sturgill's first claim alleged that, due to the contractual relationship between Sturgill and Setterlin, Setterlin owed Sturgill a duty not to negligently injure Sturgill's employees. According to the complaint, Setterlin breached its contractual obligations by negligently injuring Sturgill's employee. Sturgill alleges that, as a result of Setterlin's breach, Sturgill's employee filed a workers' compensation claim, causing Sturgill to suffer damages in the form of increased workers' compensation premiums. Sturgill's second claim asserted Setterlin's negligently installed roof access door caused injury to Sturgill's employee and, as a result, Sturgill's employee filed a workers' compensation claim, causing Sturgill to suffer damages in the form of increased workers' compensation premiums.
 {¶ 14} As relevant here, CIC agreed in its primary liability policy to "pay those sums that the insured becomes legally obligated to pay as damages because of `bodily *Page 7 
injury' * * * to which this insurance applies" and "to defend any `suit' seeking those damages." (GLP, Section I, paragraph 1a.) The insurance policy applies to "bodily injury" if the "bodily injury" is caused by an "occurrence." Id. at Section I, paragraph 1b(1). The policy defines "occurrence" as "an accident * * *." Id. at Section V, paragraph 12. "`Bodily injury' means bodily injury, sickness or disease sustained by any person * * *." Id. at Section V, paragraph 3. "Damages because of `bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury." Id. at Section I, paragraph 1c.
 {¶ 15} CIC first contends it has no duty to defend the underlying litigation because Sturgill's claims do not constitute an "occurrence" under the primary policy. Each of Sturgill's claims against Setterlin traces its origin to Ledex, Inc. v. Heatbath Corp. (1984),10 Ohio St.3d 126, where the Ohio Supreme Court held that if an employer's employee suffers injuries and is awarded workers' compensation, the employer can recover the cost of the increased workers' compensation premiums from a third party whose conduct caused the employee's injuries. Id. at syllabus. Clarifying Ledex, Cincinnati Bell Telephone Co. v.Straley (1988), 40 Ohio St.3d 372, held that an employer may not recover increased workers' compensation premiums from the third party who negligently caused the injury to the employee "in the absence of any legal relationship based upon contract or warranty between the employer and the third party." Id. at paragraph one of the syllabus.
 {¶ 16} As Cincinnati Bell explained, a third party has "a duty to the employee not to negligently injure him but that duty [is] not owed to the employer." Id. at 379, quoting *Page 8 Midvale Coal Co. v. Cardox Corp. (1949), 152 Ohio St. 437. Again quotingMidvale, Cincinnati Bell stated that "[t]he situation is entirely different where defendant not only had a duty to [the employer's] employee not to negligently injure him, but had a contractual duty to [the employer] not to cause plaintiff injury." Id. at 379-380. In such circumstances, the same negligent act of the third party was tortious as to the employer's employee, but also breached a contractual duty the third party owed to the employer. Id. Thus, "[w]here a third party negligently injures an employer's employee and such injury is a direct result of a breach of contract" the third party had with employee's employer, "and as a direct result of such breach the employer suffers damages," the employer may recover "such damages * * * against the third party in an action for breach of contract." Id. at 380-381, quotingMidvale Coal Co., supra, paragraph three of the syllabus.
 {¶ 17} Premised on that holding, CIC contends Sturgill'sLedex claims do not constitute an "occurrence" because they necessarily arise out of contract. In support, CIC cites several cases where courts broadly state breach of contract actions ordinarily do not involve "occurrences" as defined in commercial general liability ("CGL") policies. See, e.g., Monarch Constr. Co. v. Great Am. Ins. Co. (June 25, 1997), Hamilton App. No. C-960645; Owners Ins. Co. v. Reyes (Sept. 30, 1999), Ottawa App. No. OT-99-017; Stevens Painton Corp. v. Aetna Cas. Sur. Co. (Sept. 28, 1995), Cuyahoga App. No. 68464; InterstateProperties v. Prasanna, Inc., Summit App. No. 22734, 2006-Ohio-2686. CIC emphasizes that such a rule is consistent with the principle that prevents a tort recovery for purely economic losses. See Corporex Dev. Constr. Mgt. v. Shook, Inc., 106 Ohio St.3d 412, 2005-Ohio-5409. *Page 9 
 {¶ 18} "To determine coverage, we look to the policy language itself," which here provides coverage for those sums that the insured becomes obligated to pay as damages because of bodily injury arising out of an occurrence. Lehrner v. Safeco Ins./ Am. States Ins.,171 Ohio App.3d 570, 2007-Ohio-795, at ¶ 33. Lehrner provides guidance in resolving CIC's contentions. In Lehrner, a pizza delivery employee suffered a seizure while driving his car and struck Lehrner and her husband as they were walking to their car. The impact caused injury to Lehrner and death to her husband. Lehrner and her husband's estate sued the driver and the owners of the pizza shop, including a claim for negligent hiring, supervising and retention regarding the driver. The owners' insurance company, Utica First Insurance Company ("Utica"), asserted its policy provided no coverage for the claims against the owners, as the policy excluded coverage for "bodily injury or property damage that arises out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of: * * * b. an auto." Id at ¶ 28.
 {¶ 19} Although the policy contained no exclusion for a claim of negligent hiring, Lehrner concluded the "focus of the inquiry * * * must be on whether the injuries to the Lehrners arose out of the operation or supervision of a car, not on whether the Utica policy specifically excludes coverage for claims alleging negligent hiring, supervision, and retention liability." Id. at ¶ 33. As the court noted, "the Lehrners cannot maintain such a claim without demonstrating that their injuries were caused by [the driver's] own negligent operation of an automobile" that caused their injuries. Id. at ¶ 42. Because "a claim of negligent hiring, supervision and retention against an employer is not viable without an *Page 10 
underlying act of negligence by an employee that causes an injury or loss," the court concluded that "any injury or loss to the Lehrners as a result of the negligent hiring, supervision and retention" by the pizza shop owners "is not independent of the excluded cause, [the driver's] operation of an automobile, and is not covered under the Utica policy." Id. at ¶ 42-43.
 {¶ 20} As Lehrner observed, "[c]overage under the Utica policy simply is not conditioned on whether the insured's liability (i.e., the [owners'] negligent hiring, etc.) arises out of the operation of an automobile. It is conditioned on whether the injury or loss (i.e., the injuries to the Lehrners) arises out of the operation of an automobile." (Emphasis sic.) Id. at ¶ 49. Similarly here the issue is not whether Setterlin's liability arises out of breach of contract, but whether the injury or loss arose out of bodily injury as a result of an occurrence. While Sturgill's theory of liability against Setterlin may rest on breach of contract, we must determine whether any damages Setterlin is required to pay will arise out of its allegedly negligently injuring Sturgill's employee in an occurrence at the worksite.
 {¶ 21} Accordingly, even if a breach of contract claim generally is not considered an "occurrence" under a CGL policy, we nonetheless must examine CIC's policy to determine what constitutes an "occurrence." Because CIC's primary policy defines "occurrence" as an "accident" without delineating between tort and contract for the purpose of coverage, the relevant inquiry resolves to whether the allegations describe an event that arguably can be considered an "occurrence" under the policy's coverage. See Pilkington N. Am., Inc., supra;Willoughby Hills, supra. Cf. Stevens Painton Corp., supra *Page 11 
(finding an action for breach of contract, grounded on the failure to name a party as an additional insured, is not an accident) withDublin Building Systems v. Selective Ins. Co. of America, Franklin App. No. 06AP-213, 2007-Ohio-494 (finding an action for breach of contract, grounded on failure to perform in workmanlike manner, constitutes an accident).
 {¶ 22} Here, unlike cases where a breach arises from a failure to comply with the terms of a contract, Sturgill alleged in accordance withCincinnati Bell that Setterlin's negligent conduct constituted the alleged breach. Cincinnati Bell, supra, at 380. Under CincinnatiBell, Sturgill is able to bring its claims due to the contractual relationship between Sturgill and Setterlin, but the claims nonetheless are premised on Setterlin's allegedly negligent conduct. Because CIC does not contend, nor can it legitimately claim, that Setterlin's negligent conduct was anything but accidental or unanticipated, Sturgill's Ledex claims allege an event that constitutes an "occurrence" under CIC's primary policy.
 {¶ 23} CIC next argues it has no duty to defend the underlying litigation because Sturgill did not suffer "bodily injury" as a result of an accident. Relying on Cincinnati Ins. Co. v. Anders,99 Ohio St.3d 156, 2003-Ohio-3048, CIC again emphasizes that Sturgill's Ledex claims necessarily arise from a breach of contract claim. CIC thus contends Setterlin's breach caused Sturgill only economic, not physical, injury. We initially note that CIC's policy does not specify who must suffer the bodily injury. Rather, under the policy CIC is obligated to pay those sums Setterlin becomes obligated to pay as damages because of bodily injury caused by an occurrence. Moreover, CIC's reliance onAnders is misplaced. *Page 12 
 {¶ 24} In Anders, insured homeowners were sued for failing to disclose structural, electrical, mechanical, and plumbing defects in the sale of their home. Their policy included a provision that their insurance company would defend them if they were sued for property damage arising out of an occurrence, defined as an accident. Id. at ¶ 27. In determining whether the insurance company owed the insureds a duty to defend the action against them, Anders found the "alleged negligent nondisclosure of the structural damage was not an accident that resulted in property damage but, rather, an accident that allegedly caused economic damages. The actual accident was the faulty installation of the insulation, leading to the structural deterioration of the house." Id. at ¶ 36. Concluding the underlying claims pertained to the nondisclosure of the damage, not the damage itself, the court held the underlying claims were outside the scope of the policy. Id.
 {¶ 25} Analogizing the underlying litigation to Anders, CIC contends the accident here was "Setterlin's alleged breach of duty (grounded in tort) to the injured employee. Setterlin's alleged breach of duty (grounded in contract) to Sturgill was not an accident (or `occurrence') that resulted in * * * bodily injury." (CIC's brief, at 13.) CIC thus concludes coverage was not triggered under the primary policy. Contrary to CIC's contentions, Setterlin's same negligent act breached both the duty Setterlin owed Sturgill in contract and the duty Setterlin owed Sturgill's employee in tort and caused bodily injury to Sturgill's employee. Thus, unlike the underlying claims in Anders, which pertained to an act apart from the property damage in question, the underlying litigation here directly pertains to the bodily injury of Sturgill's employee. *Page 13 
 {¶ 26} In a related argument, CIC contends it has no duty to defend the underlying litigation because Sturgill's Ledex claims against Setterlin do not seek to recover "damages because of `bodily injury.'" Relying on Diamond State Ins. Co. v. Chester-Jensen Co., Inc. (1993), 243 Ill.App.3d 471, CIC claims the underlying litigation seeks purely economic loss notwithstanding the fact that such economic loss resulted from bodily injury to Sturgill's employee.
 {¶ 27} In Diamond, the state of Illinois filed a complaint against the insured alleging breach of contract, breach of express warranty and fraud arising from an inadequately designed, defectively installed, and defectively constructed air conditioning system. Illinois claimed the air conditioning failed to adequately cool its office building and, as a result, the state suffered economic and other damages. Included among the claimed damages were lost workdays due to employees who became ill from the excessive temperatures the faulty air conditioning system caused.
 {¶ 28} The insured's insurance companies accepted the insured's tender of defense in Diamond, but reserved their right under the policies to deny coverage and filed an action for declaratory judgment. The complaint initially contended the underlying litigation did not arise out of an "occurrence," but it also alleged the complaint did not seek property damages or bodily injury covered under the policies because the complaint sought economic losses resulting from the insured's breach of contract, breach of express warranty, and fraud. The trial court granted summary judgment in favor of the insurance companies; the insured appealed. *Page 14 
 {¶ 29} The insured claimed coverage under the "on account of bodily injury" provision of the policies, reasoning that the damages for employee lost workdays resulted from heat-related illnesses. Id. at 477. The court disagreed with the insured's argument, finding it ignored the nature of the underlying claims. As the court observed, "[t]he State is not bringing this action on behalf of its employees, seeking recovery for damages sustained by them on account of their illness or other bodily injury." Id. The court further noted the state was not "seeking to be reimbursed or indemnified for its liability to its employees. Rather, [the insured] is claiming coverage for its liability to the State for the State's economic losses simply because those economic losses of the State are alleged in part to be attributable to illness or injury of the State's employees." Id. Although the court acknowledged that the state's claim for economic losses "may have been occasioned in part by illness of its employees," the court concluded the state's claim for economic losses cannot be transmuted into one for bodily injury. Id. at 477-478.
 {¶ 30} Diamond is distinguishable on the pivotal point of the case: the type of damages the state sought from the insured. At first blush, Setterlin's contentions might appear more persuasive if Sturgill were self-insured and paid its employee's medical bills. Sturgill, however, in effect is paying its employee's medical bills in the form of increased workers' compensation, a factor Cincinnati Bell apparently considered in allowing both a self-insured and a state fund employer to bring a Ledex claim seeking reimbursement for expenses paid on behalf of its injured employee. Unlike the state in Diamond, which sought damages the state sustained, Sturgill seeks damages its employee sustained and it paid because of the employee's bodily injuries. *Page 15 
 {¶ 31} CIC finally argues it has no duty to defend the underlying litigation because the primary policy's exclusion applies to the underlying litigation. CIC's primary policy expressly excludes "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." (GLP, Section I, paragraph 2d.) An insurance contract is construed in accordance with the same rules as other written contracts. Hybud Equip.Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665. Ambiguities in insurance policies are to be construed liberally in favor of coverage. Id. When, however, the language in an insurance policy is clear and unambiguous, the words are given their plain and ordinary meaning and the contract is enforced as written. Id.
 {¶ 32} The workers' compensation exclusion expressly applies to any obligation of Setterlin under a workers' compensation law. The underlying litigation, however, consists of (1) Sturgill'sLedex claims, (2) for increased workers' compensation premiums (3) that Sturgill owes to the Ohio Bureau of Workers' Compensation. The underlying litigation thus arises under the authority of Ledex, not under a workers' compensation law. Nor does it pertain to obligations Setterlin owes under a workers' compensation law, but seeks damages because of Sturgill's obligation under a workers' compensation law. CIC's primary policy therefore does not exclude the underlying litigation from coverage.
 {¶ 33} Accordingly, CIC's first assignment of error is overruled.
 {¶ 34} CIC's second assignment of error contends it has no duty to defend under the umbrella policy it issued to Setterlin. Because the terms of the umbrella policy, as relevant here, are nearly identical to the terms of the primary policy, CIC has duty to *Page 16 
defend under the umbrella policy for the same reasons the duty arises under its primary policy. CIC's second assignment of error is overruled.
II. Setterlin's Assignment of Error on Cross-Appeal {¶ 35} Setterlin's assignment of error on cross-appeal contends the trial court erred in denying its motion for summary judgment on its claim for attorney fees incurred in defending CIC's declaratory judgment action. An appellate court has jurisdiction over final, appealable orders; if an order is not final, then an appellate court has no jurisdiction. Section 3(B)(2), Article IV, Ohio Constitution;General Acc. Ins. Co. v. Ins. Co. of North America (1989),44 Ohio St.3d 17, 20. To be final, an order must fit one of the categories set forth in R.C. 2505.02(B): (1) "An order that affects a substantial right in an action that in effect determines and prevents a judgment"; or (2) "An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."
 {¶ 36} When the trial court denied Setterlin's motion for summary judgment on its claim for attorney fees, the court's decision did not determine or prevent a judgment in Setterlin's favor. It thus does not constitute a final order under the first category of R.C. 2505.02.Celebrezze v. Netzley (1990), 51 Ohio St.3d 89, 90.
 {¶ 37} A declaratory judgment action is a special proceeding under the second category of R.C. 2505.02. Nonetheless, the order did not foreclose Setterlin from presenting additional facts and seeking relief for its claims at trial. Bell v. Mt. Sinai Med. Ctr (1993),67 Ohio St.3d 60, 63 (finding an order affecting a substantial right is "one which, if not immediately appealable, would foreclose appropriate relief in the future"). An *Page 17 
overruled summary judgment motion, even if made in a special proceeding, does not affect a substantial right under R.C. 2505.02, because "the court refused to make an `order,' within the statutory meaning of that word, on the motion for summary judgment, and retained the case for trial on the merits." Swanson v. Ridge Tool Co. (1961),113 Ohio App. 357, 359.
 {¶ 38} Accordingly, the trial court's judgment regarding Setterlin's claim for attorney fees incurred in defending CIC's declaratory judgment action is not a final order. As a result, we lack jurisdiction to consider the merits of the assigned error in Setterlin's cross-appeal. Setterlin's cross-appeal is dismissed.
 {¶ 39} Having overruled CIC's two assignments of error, and dismissed Setterlin's cross-appeal, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BROWN and TYACK, JJ., concur. *Page 1