{¶ 1} Plaintiff Garee Stiggers appeals from the judgment of the trial court that entered summary judgment to defendant Erie Insurance Co. in Stiggers' declaratory judgment action. For the reasons set forth below, we affirm.
 {¶ 2} In 1999, Stiggers and Eldridge Elie, dba Elie Construction Co. (hereafter "Elie") entered into an agreement for the completion of an addition at Stigger's property on Gay Avenue in Cleveland. At all relevant times, Elie was insured under a Contractor's Policy issued by Erie. In relevant part, this policy provided that Erie would provide coverage for:
 {¶ 3} "Bodily injury and property damage which occurs during the policy period. The bodily injury or property damage must be caused by anoccurrence which takes place in the covered territory."
 {¶ 4} The term "occurrence" is defined as "an accident, including continuous or repeated exposure to the same general, harmful conditions."
 {¶ 5} The policy also set forth numerous exclusions including the following:
 {¶ 6} "B. Coverages D, E and H.
 {¶ 7} "We do not cover under * * * Property Damage Liability (Coverage E) * * *
 {¶ 8} "1. liability assumed by anyone we protect in a contract or agreement.* * *
 {¶ 9} "7. property damage to
 {¶ 10} "* * * *Page 4 
 {¶ 11} "d. that particular part of real property upon which operations are being performed by you or any contractor or subcontractor working directly or indirectly on your behalf, if the property damage arises out of those operations.
 {¶ 12} "e. that particular part of any property that must be restored, repaired or replaced because your work was faulty. * * *
 {¶ 13} "8. property damage to impaired property or tangible property not physically injured or destroyed, resulting from:
 {¶ 14} "a. delay in or lack of performance on a contract or agreement by or for you; or
 {¶ 15} "b. a defect, deficiency, inadequacy or dangerous condition inyour product, your work,[1] or work performed for you.
 {¶ 16} "C. Coverages D, E and J
 {¶ 17} "4. property damage to your product arising out of such product or any part or portion of it.
 {¶ 18} "6. Damages claimed for any loss, cost or expense incurred byyou or others for the loss of use, withdrawal, inspection, replacement, recall, repair, adjustment, removal, or disposal of:
 {¶ 19} "a. your product; *Page 5 
 {¶ 20} "b. your work; or
 {¶ 21} "c. impaired property;
 {¶ 22} "If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it."
 {¶ 23} In March 2001, Stiggers filed suit against Elie in connection with the construction of the addition. The matter was dismissed after Stiggers failed to appear. In January 2003, Stiggers refiled the action, alleging that Elie and his subcontractor Clyde Pope did not complete the project and that the work performed was defective and had to be removed. In the five claims for relief, she alleged that Elie and subcontractor Pope breached the contract by poor performance and walking off the job, breached express warranties, failed to use ordinary care and skill to perform in a workmanlike manner, violated the Consumer Sales Practices Act by misrepresenting the quality of materials and workmanship, and violated the Magnuson-Moss Warranty Act.
 {¶ 24} Stiggers obtained a default judgment against Elie and was awarded damages in the amount of $55,780. On September 26, 2003, Stiggers filed the instant declaratory judgment action against Erie Insurance, pursuant to R.C. 3929.06(A) seeking satisfaction of the judgment against Elie. *Page 6 
 {¶ 25} Erie moved for summary judgment, asserting that the policy which it issued to Elie was a general liability policy and not a performance bond. Erie further asserted that it did not learn of Stiggers' action against Elie until December 2001, and therefore was not provided with timely notice of the lawsuit. Further, although Stiggers' attorney later requested a copy of the reservation of rights and denial of coverage letters, Erie was not notified that the lawsuit had been refiled until after the court entered a default judgment against Elie. Erie also maintained that the action against Elie sought the repair and replacement of allegedly defective construction and therefore involved purely economic loss, and not "property damage" and/or "accidental occurrence" within the coverage of the policy. Additionally, Erie asserted that recovery was barred by the exclusions pertaining to professional services and property damage arising out of "operations being performed," "faulty work," and delay in performance and defective performance.
 {¶ 26} Stiggers filed a brief in opposition and cross-motion for summary judgment. As to the notice issue, Stiggers indicated that in December 2001, Erie denied Elie coverage and indemnification and this, she maintained, established actual notice and waived the need for additional notice of the refiled action. Stiggers further asserted that the allegations of her complaint against Elie were sufficient to establish an "occurrence" and "property damage" under the policy. She further maintained that the exclusions of the policy were not applicable. *Page 7 
 {¶ 27} The trial court granted Erie's motion and Stiggers now appeals and assigns six errors for our review.
 {¶ 28} Stiggers' first, second, and sixth assignments of error are interrelated and state:
 {¶ 29} "I. The trial court erred in ruling that Zanco [v. MichiganMutual Ins. Co. (1984), 11 Ohio St.3d 114] and its progeny — including this court's decision in Bosak [v. HR Mason Contractors, Inc., Cuyahoga App. No. 86237, 2005-Ohio-6732] hold that there is no coverage for the cost of repairing or replacing a contractor's defective work under a CGL policy.
 {¶ 30} "II. The trial court erred in ruling that in the Zanco opinion the Ohio Supreme Court held that CGL policies are never intended to cover claims for unworkmanlike construction.
 {¶ 31} "VI. The trial court erred in denying the Appellant's cross-motion for summary judgment [as] none of the relevant exclusionary clauses of the policy apply to the facts [of] the appellant's claim."
 {¶ 32} This matter was brought pursuant to R.C. 3929.06 which provides in pertinent part:
 {¶ 33} "(1) If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff * * * and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or *Page 8 
loss, the plaintiff * * * is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment."
 {¶ 34} In evaluating the trial court's determination that Erie was entitled to judgment as a matter of law, we note that the award of summary judgment is reviewed de novo using the same standards as the trial court. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108, 652 N.E.2d 684.
 {¶ 35} A trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164, 1171.
 {¶ 36} As to the substantive law pertaining to coverage in a commercial general liability policy we begin by noting that several cases have determined that "allegations that a building contractor breached its duty to construct or design a building in a workmanlike manner are sufficient to invoke the general coverage provision for property damage caused by an occurrence." See Dublin Bldg. Sys. v.Selective Ins. Co. of Am., 172 Ohio App.3d 196, 2007-Ohio-494,874 N.E.2d 788, *Page 9 
citing Erie Ins. Exchange v. Colony Dev. Corp. (1999),136 Ohio App.3d 406, 736 N.E.2d 941. See, also, Hahn's Elec. Co. v. Hartford Cas.Co., Franklin App. No. 01AP-1391, 2002-Ohio-5009 (allegations that a contractor negligently performed its work and breached its duty to perform in a workmanlike manner arguably fall within the policy's coverage for property damage caused by an occurrence); Zanco, supra ("[a] perfectly credible argument can be made that the allegations in the * * * counterclaim [for breach of its duty to perform in a workmanlike manner] were within these initial provisions for coverage"); and Acme Constr. Co., Inc. v. Continental Nat. Indemn. Co., Cuyahoga App. No. 81402, 2003-Ohio-434 (stating that allegations of negligence or defective workmanship regarding a sewer system constituted an occurrence).
 {¶ 37} We further note that a contrary result was reached in Natl.Eng. Contracting Co. v. United States Fid. Guar Co., Franklin App. No. 03AP-435, 2004-Ohio-2503. In that case, the court found that faulty workmanship was not an "occurrence." Accord Heile v. Herrmann (1999),136 Ohio App.3d 351, 736 N.E.2d 566 (holding that faulty workmanship does not constitute an occurrence).
 {¶ 38} However, the coverage provisions standing alone are not controlling; the exclusions from coverage must also be examined. As stated in Zanco, supra:
 {¶ 39} "although a perfectly credible argument can be made that the [defective workmanship] allegations in the . . . counterclaim were within these initial provisions *Page 10 
for coverage, the insurance contracts must be examined in their entirety to determine if there are any applicable exceptions to their coverage."
 {¶ 40} Id.
 {¶ 41} With regard to the exclusions generally contained within such policies, this court has observed:
 {¶ 42} "Ohio courts have found that such standard exclusions in a business liability policy ensure that `damage resulting from a contractor's own work usually is excluded as liability insurance should not be a warranty or performance bond for general contractors.' * * * The exclusions generally operate to exclude coverage for damage to the work of the insured, but generally do not exclude coverage for collateral damage to other property. `This is to discourage careless work by making general contractors pay for any losses caused by their own work.' * * * Thus, a liability policy does not cover claims for the insured's defective or insufficient work or for the repair or replacement of that work." Acme Constr. Co. v. Cont'l Nat'l Indem.Co., supra, citing Hahn's Electric Co. v. Cochran, supra. See, also,Bosak v. H R Mason Contrs., Inc., Cuyahoga App. No. 86237,2005-Ohio-6732 (Exclusions in an insurance policy generally operate to ensure that most damage resulting from a contractor's own work is excluded from coverage because liability insurance should not be a warranty or performance bond for general contractors.)
 {¶ 43} More specifically, the Acme court determined that the "work performed" exclusion applied to bar coverage and this provision is comparable to the exclusions *Page 11 
set forth in B.7 (exclusion for operations performed by you or any contractor) and C. 4 (property damage to your product). TheAcme court stated:
 {¶ 44} "It is facially apparent that all of Rosby's performance-related counterclaims fall under the `work performed' exclusion contained in Acme's CNI policy because all relate to causes of action based on Acme's conduct in constructing the system or making various representations regarding its ability to do so."
 {¶ 45} Similarly, in Zanco v. Michigan Mut, supra, the court held that "it is `immediately apparent' that the `work performed' exclusion has direct application to these facts [and] the `product' exclusion is operative here." Such provisions are analogous to Exclusions B.7 and C.4 contained in the instant policy.
 {¶ 46} In addition, in Nat'l Eng. Contr. Co. v. United States Fid. Guar. Co., Franklin App. No. 03AP-435, 2004-Ohio-2503, the court considered exclusions for delay in or lack of performance by the insured and the failure of the insured to meet the level of performance, quality, fitness, or durability warranted or represented. The court held that this exclusion generally operates to exclude coverage for damage to the work of the insured as a result of poor or defective work performance. Such exclusion is analogous to Exclusion B.8 in the instant policy (exclusion for lack of performance or inadequacy of work performed).
 {¶ 47} In LISN v. Commercial Union Ins. Co., 83 Ohio App.3d 625, 630,615 N.E.2d 650 the court applied a "faulty workmanship exclusion," which is analogous *Page 12 
to Exclusion B.7 (exclusion for damages or repairs to property where contractor is performing operations) and held that "the replacement or repair of faulty goods or workmanship is a business expense and not an insurable liability." Id.
 {¶ 48} In Group v. Kratzer (Feb. 12, 1992), Summit App. No. 91CA005129, the court held that an exclusion for property damage from the particular part of real property upon which operations are being performed was applicable to bar coverage, and this provision is analogous to Exclusion B.7.d herein.
 {¶ 49} Finally, in Erie Ins. Exch. v. Colony Dev. Corp., Franklin App. Nos. 02AP-1087 and 02AP-1088, 2003-Ohio-7232, the court determined that an exclusion barring damage for delay or defect in the work, which is analogous to Exclusion B.8 herein was applicable to bar coverage.
 {¶ 50} By application of all of the foregoing, the exclusions bar coverage in this matter and the trial court therefore properly determined that Stiggers could not recover pursuant to R.C. 3929.06, and that Erie was entitled to judgment as a matter of law.
 {¶ 51} The first, second, and sixth assignments of error are without merit.
 {¶ 52} Stiggers' third assignment of error state:
 {¶ 53} "III. The trial court erred when it failed to consider that the plain language of the policy and the legislative intent of the City Council of Cleveland make it clear that this policy is intended to provide coverage for claims of defective work." *Page 13 
 {¶ 54} In evaluating this assignment of error, we note that insurance coverage is determined with reference to the parties' contract as well as controlling statutes and common law. See, e.g., Ross v. Farmers Ins.Group of Companies (1998), 82 Ohio St.3d 281, 288, 1998-Ohio-381,695 N.E.2d 732. The stated policy considerations of the city therefore cannot be used to impute insurance coverage where it does not otherwise exist. Moreover, the instant policy is not a performance bond which may be mandated by the city in certain instances to advance these stated policy concerns.
 {¶ 55} This assignment of error is therefore without merit.
 {¶ 56} Stiggers' fourth assignment of error states:
 {¶ 57} "IV. The trial court erred when it held that claims of faulty workmanship cause purely economic loses, and never `property damage covered by CGL.'"
 {¶ 58} As we noted previously,
 {¶ 59} "although a perfectly credible argument can be made that the [defective workmanship] allegations in the . . . counterclaim were within these initial provisions for coverage, the insurance contracts must be examined in their entirety to determine if there are any applicable exceptions to their coverage." Zanco v. Michigan Mut, supra.
 {¶ 60} Accordingly, coverage issues are not controlling and exclusions must be evaluated. As the exclusions are applicable in this matter, this claim lacks merit.
 {¶ 61} Stiggers' fifth assignment of error states: *Page 14 
 {¶ 62} "V. The trial court erred in granting the appellee's motion for summary judgment [as] there are genuine issues of material fact raised by the appellant's briefs that preclude an award of summary judgment in favor of the appellee."
 {¶ 63} As noted previously, Erie is entitled to judgment as a matter of law by operation of the work performed and other exclusions. There are no genuine issues of material fact.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., CONCURS MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY
[1] The term "your work" is defined as "work or operations performed by you or on your behalf" and "materials, parts or equipment furnished in connection with such work or operations" and also includes "warranties or representations made at any time with respect to the fitness, quality, durability or performance of your work[.]" *Page 1