[Cite as *Eighth Floor Promotions, L.L.C. v. Cincinnati Ins. Cos.*, 2016-Ohio-7259.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MERCER COUNTY

EIGHTH FLOOR PROMOTIONS,

    **PLAINTIFF-APPELLANT,**               CASE NO.  10-15-19

    v.

THE CINCINNATI INSURANCE
COMPANIES,                            **O P I N I O N**

    **DEFENDANT-APPELLEE.**

**Appeal from Mercer County Common Pleas Court**
**Trial Court No. 13-CIV-009**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:  October 11, 2016**

**APPEARANCES:**

    *Stuart E. Scott and Daniel Frech* **for Appellant**

    *Nancy K. Tordai and D. Wesley Newhouse* **for Appellee**

**ROGERS, J.**

{**¶1**} Plaintiff-Appellant, Eighth Floor Promotions, L.L.C. ("Eighth Floor"), appeals the judgment of the Court of Common Pleas of Mercer County granting summary judgment in favor of Defendant-Appellee, The Cincinnati Insurance Companies ("Cincinnati Insurance"). On appeal, Eighth Floor argues that the trial court erred in finding that Cincinnati Insurance did not have a duty to defend it against allegations of copyright infringement. For the reasons that follow, we affirm in part, and reverse in part, the judgment of the trial court, and remand for further consideration.

{**¶2**} This case arises out of an insurance coverage dispute between Eighth Floor and Cincinnati Insurance. Eighth Floor is a Nevada limited liability company with its principle place of business in Celina, Ohio. It manufactures and sells sports awards and business gifts. It is managed by a few officers, some of whom also sit on its board of directors.

{**¶3**} Eighth Floor's Operating Agreement provides that it will "indemnify and hold harmless" its officers and directors "[i]n any "threatened * * * claim, action or proceeding to which any officer or any [director] * * * is [a] party or is threatened to be made a party by reason of its or his activities on behalf of [Eighth Floor]." (Docket No. 35, Ex. 2, p. 15).

**{¶4}** In 2010, Eighth Floor purchased an insurance policy from Cincinnati Insurance ("the Policy"). The Policy provided that Cincinnati Insurance would "pay on behalf of the 'company' all 'loss' which the 'company' [was] required to pay as indemnification to the 'individual insureds' resulting from any 'claim' first made during the 'policy period' * * * for a 'wrongful act' ". (Docket No. 33, Ex. 1-A, p. 12). The Policy defined "company" as "the 'insured entity' and any 'subsidiary' " and "individual insureds" as "[a]ll persons who were, now are, or shall become directors, officers or employees, of the 'company' ". (*Id*. at p. 14).

**{¶5}** On May 11, 2011, Eighth Floor's Chief Executive Officer, Dave Willis, received the following letter from the Business Software Alliance ("the BSA"):

> Dear Mr. Willis:
>
> This firm represents [the BSA] in connection with its investigation of possible instances of illegal duplication of certain software companies' proprietary software products. The BSA represents the interests of [17 software companies].
>
> We recently have been advised that [Eighth Floor] has installed on its computers more copies of [22 software programs] than it is licensed to use.
>
> Unauthorized duplication of computer software products constitutes copyright infringement. The Copyright Act (17 U.S.C. § 101 et seq.) provides that copyright owners may recover actual damages or statutory damages. In cases where the infringement is willful statutory damages can reach $150,000 for each copyrighted product that has been infringed. The copyright owner can also seek attorneys [sic] fees.

However, [the] BSA member companies have determined that litigation may not be necessary in this case, especially as senior management may not have had an opportunity to investigate or consider the ramifications of using unlicensed software. The BSA member companies instead wish to resolve this matter amicably by providing Eighth Floor with an opportunity to conduct its own company-wide investigation. To take advantage of this opportunity, Eighth Floor's investigation must include an audit of all of the software published by [the] BSA members (*see above*) on all of its computers and a review of the software licenses and proofs of purchase for those licenses.

Please understand that while we are contacting you in an effort to avoid litigation, the BSA member companies are not waiving their right to litigate to protect their copyrights if this effort is not successful. We therefore must insist that you contact us by May 31, 2011. At that time we will provide you with specific guidance on how to conduct your audit.

In addition, please <u>do not destroy</u> or replace any copies of any of the computer software products published by the above-mentioned companies that are currently installed on Eighth Floor's computers. The software programs installed on Eighth Floor's computers are evidence and therefore must be preserved in case this matter does proceed to litigation. In the meantime, you should not attempt to enter into any negotiations with sales representatives of these companies to purchase computer software products prior to the resolution of this matter.

We look forward to your cooperation.

Sincerely,

Troutman Sanders LLP

* * *

(Emphasis sic.) (Docket No. 35, Ex. 4). The letter ("the audit request") was forwarded to Eighth Floor's insurance agent, who forwarded it to Cincinnati Insurance.

{¶6} On May 20, 2011, Eighth Floor retained counsel to conduct a software compliance audit and prepare a summary of the results; assist it in its efforts to comply with all applicable software licensing requirements; attempt to negotiate a favorable settlement with the BSA; review its applicable insurance policies; and review proposed software license purchases.

{¶7} On May 26, 2011, Cincinnati Insurance denied coverage for losses incurred in connection with the audit request. It explained that the audit request did not constitute a "claim" under the Policy because it was neither a "written demand for monetary damages or non-monetary relief" nor a "civil proceeding commenced by filing a complaint or similar pleading." (Docket No. 33, Ex. 1-C, p. 2). It agreed, however, to treat the audit request as a "notice of circumstances" that may give rise to a claim covered under the Policy but warned that "based on the information currently known," coverage for a future claim may be limited or precluded under one of the Policy's exclusions. (*Id.*)

{¶8} On November 9, 2011, after Eighth Floor's software compliance audit revealed numerous unauthorized software installations, Eighth Floor's counsel received the following letter from the BSA:

Dear Mr. Barnett:

Thank you for investigating the installation and licensing of certain computer software products at [Eighth Floor]. [The] BSA appreciates Eighth Floor's cooperation in this matter.

As you may know, unauthorized duplication of computer software products constitutes copyright infringement for which the Federal Copyright Act, specifically 17 U.S.C. § 504(c), allows the recovery of statutory damages ranging up to $150,000 per product for willful conduct. Even if willful conduct cannot conclusively be established, Section 504 permits the copyright owner to elect an award of non-willful statutory damages of as much as $30,000 for each work infringed without the necessity of demonstrating actual damages. Additionally, 17 U.S.C. § 505 permits the court to award to the prevailing party its costs and reasonable attorneys' fees.

Often when the BSA investigates [sic] company for copyright infringement and discovers unauthorized activity, [the] BSA will seek in settlement an amount equal to several times the full retail value of all unauthorized copies of software products published by the software companies whose interests are represented by [the] BSA.

In this case, however, [the] BSA member companies believe that it is the best interest of all parties to resolve this matter short of litigation. To that end, we have formulated a settlement proposal which takes into account the manufacturer's suggested retail price ("MSRP") of the unlicensed installations, the cooperation Eighth Floor has exhibited, and all underlying facts. While the amount to be derived from the BSA falls well below Eighth Floor's maximum exposure as set out above, [the] BSA's approach does serve a similar purpose – to deter infringement.

After all, if it were possible simply to become compliant once infringement was discovered, there would be no reason to obey the copyright laws in the first place. To the contrary, such a system would create substantial incentive to copy software. Accordingly, I have been authorized to extend a settlement offer on the following terms, which are documented in the attached Settlement Agreement:

1.    Eighth Floor will certify through one of its corporate officers, that (a) the software inventory report(s) provided during the negotiation of this settlement is true and accurate and contains a complete and accurate list of all copies of all Computer Software Products installed on its computers as of May 11, 2011; (b) all Computer Software Products installed on Eighth Floor's computers for which it does not have a license have been destroyed; (c)  a sufficient number of licenses for the remaining Computer Software Programs have been purchased to ensure legal use; and (d) only licensed copies of the Computer Software Products are now and will in the future be installed on Eighth Floor's computers. Documentation of compliance with these provisions will be provided along with the certificate described above.

2.    Eighth Floor will agree to execute a Software Code of Ethics and to circulate it to all employees, personnel and affiliated companies.

3.    Eighth Floor will agree to permit the BSA to conduct two inspections per year for three years of Eighth Floor's computers to confirm the absence of copyright infringement.  The inspections will be at the BSA's option and expense absent any discovery of infringement, and at Eighth Floor's expense if infringement is found to any Computer Software Product.

4.    Eighth Floor will make a payment to the BSA in the amount of $179,393.48, a three-time multiplier of the MSRP owed plus attorney's fees.  This payment is to resolve Eighth Floor's potential liability for copyright infringement and is in addition to any costs incurred by Eight Floor in complying with item 1 above.

5.    [sic] The BSA member companies will forego the filing any lawsuit against Eighth Floor and will release Eighth Floor from any liability related to past infringement of the copyrights in the software products listed below due to Eighth Floor's use and/or installation of those products on Eighth Floor's computers.

\* \* \*

> This offer is made with the assumption that this case will settle quickly. If it does not, costs will only increase and the potential for a non-litigation resolution will decrease.
>
> The remaining terms of [the] BSA's settlement offer are set out in the enclosed settlement agreement. * * *
>
> Sincerely,
>
> [Troutman Sanders]

(Docket No. 33, Ex. 1-D, p. 3-7. Attached to the letter was a "Settlement Agreement," offering to release "Eighth Floor, its officers, directors, employees, shareholders, attorneys and assigns" from any and all claims relating to the alleged copyright infringement in exchange for Eighth Floor's compliance with the above-mentioned terms. (*Id*. at p. 9).

**{¶9}** The letter and settlement agreement (collectively "the settlement offer") was forwarded to Eighth Floor's insurance agent, who forwarded it to Cincinnati Insurance.

**{¶10}** On December 8, 2011, Cincinnati Insurance denied coverage for losses incurred in connection with the settlement offer. It acknowledged that the settlement offer constituted a "claim" under the Policy but stated that it had no obligation to defend or indemnify Eighth Floor under Exclusion K of the Policy. (Docket No. 35, p. Ex. 15, p. 4). It explained,

> The Policy includes a copyright infringement exclusion[.] Part V. Section I. – Exclusion K provides that Cincinnati [Insurance] is not liable to pay, indemnify or defend any 'claim';

> * * *  Based upon, arising out of, or in consequence of, or in any way involving actual or alleged infringement of copyright, patent, trademark, trade secret, service mark, trade name, or misappropriation of ideas or trade secrets or other intellectual property rights. . .

(*Id.*)

{¶11} Later that month, Eighth Floor entered into a settlement agreement with the BSA whereby Eighth Floor and its officers and directors were released from any and all claims relating to the alleged copyright infringement.

{¶12} On January 22, 2013, Eighth Floor filed a complaint in the Court of Common Pleas of Mercer County seeking declaratory relief regarding the terms of the Policy and asserting breach of contract and bad faith claims against Cincinnati Insurance. Cincinnati Insurance filed a timely answer, and eventually, both parties moved for summary judgment.

{¶13} In its motion for summary judgment, Cincinnati Insurance argued that it did not have a duty to defend Eighth Floor under the terms of the Policy. Specifically, it argued that the audit request was not a "claim" within the meaning of the Policy, and even if it was, the audit request and the settlement offer were excluded from coverage under Exclusion K because they were "claims" concerning copyright infringement against Eighth Floor.

{¶14} Conversely, Eighth Floor argued that Cincinnati Insurance had a duty to defend it under the terms of the Policy. Specifically, it argued that the audit

request was a "claim" within the meaning of the Policy because it demanded an audit and the preservation of software and threatened litigation. It further argued that the audit request and the settlement offer were not excluded under Exclusion K because that exclusion did not apply to a " 'claim' against any 'individual insureds'." (Docket No. 35, p. 10). It explained, "the BSA [sic] allegations constituted a copyright 'claim' against the 'individual insureds' (the [o]fficers and [d]irectors) because the [o]fficers and [d]irectors were by law both vicariously liable for the infringement, and jointly and severally liable with the company for the damages." (*Id.*)

**{¶15}** Both parties later filed briefs in opposition of summary judgment and reply briefs in support of summary judgment.

**{¶16}** On November 23, 2015, the trial court granted Cincinnati Insurance's motion for summary judgment, denied Eighth Floor's motion for summary judgment, and dismissed Eighth Floor's complaint. In doing so, it made the following findings of fact and conclusions of law:

> 1. Eighth Floor's claims against [Cincinnati Insurance] are for the costs and expenses for resolving the claims made by [the] BSA against Eighth Floor for copyright infringement.
>
> 2. [The audit request] from [the] BSA to Eighth Floor does not satisfy the [Policy's] definition of a 'claim' against any insureds as set forth in the [P]olicy.

3.    The [settlement offer] from [the] BSA * * * is a claim against Eighth Floor only, despite the potential liability of its officers and directors under the federal copyright infringement protection statute.

4.    Despite the proposed settlement agreement explicitly releasing the directors and officers from liability to [the] BSA, [the] BSA never made any claim against those persons who are the named insureds as defined in the exception to Exclusion K of the [Policy] that excluded coverage for the losses Eighth Floor may incur for violating the copyright infringement statute.

5.    Because [the] BSA never made a written demand against an individual officer or director for whom the exception to Exclusion K of the [Policy] provides coverage, [the] BSA never made a claim against those individuals insured by the [P]olicy * * *.

6.    Although [the] BSA could have made claims against the officers and directors of Eighth Floor for violations of the copyright infringement law, which claims would have been covered under the [P]olicy, the fact remains that it did not; and because [the] BSA made its claims only against Eighth Floor, despite the language of the proposed settlement agreement that released the officers and directors of Eighth Floor for any claims of [the] BSA, no claim was ever made by [the] BSA against Eighth Floor that is covered by the terms of the [P]olicy * * *.

(Docket No. 63, p. 6-7).

{¶17} It is from this judgment that Eighth Floor appeals, presenting the following assignment of error for our review.

### *Assignment of Error*

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT THE LETTERS SENT TO EIGHTH FLOOR THROUGH ITS DIRECTORS AND OFFICERS, WHEN CONSIDERING THE SURROUNDING CIRCUMSTANCES, DID NOT GIVE RISE TO A DUTY FOR CINCINNATI INSURANCE COMPANY TO PROVIDE A**

**DEFENSE TO THE DIRECTORS AND OFFICERS UNDER THE BLUE CHIP POLICY.**

{**¶18**} In its sole assignment of error, Eighth Floor argues that the trial court erred in finding that Cincinnati Insurance did not have a duty to defend it against the BSA's allegations of copyright infringement. Specifically, Eighth Floor argues that the trial court erred in finding that (1) the audit request was not a "claim" under Part I, Section IV of the Policy and (2) that the settlement offer was excluded from coverage under Exclusion K of the Policy. We agree, in part.

{**¶19**} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). However, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis, the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or

stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

**{¶20}** The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

*The Policy*

**{¶21}** Part I of the Policy is titled "DIRECTORS AND OFFICERS LIABILITY AND COMPANY COVERAGE." (Docket No. 33, Ex. 1-A, p. 12). Part I, Section I, titled "INSURING AGREEMENTS", provides that Cincinnati Insurance will "pay on behalf of the 'company' all 'loss' which the 'company' is required to pay as indemnification to the 'individual insureds' resulting from any 'claim' first made during the 'policy period' * * * for a 'wrongful act' ". (*Id.*)

**{¶22}** Part I, Section IV, titled "DEFINITIONS", provides the following definitions:

A.    'Claim' means:

    1.    A written demand for monetary damages or non-monetary relief; or

    2.    A civil proceeding commenced by filing of a complaint or similar pleading;

    * * *

B.    'Company' means the 'insured entity' and any 'subsidiary'.

C.    'Individual insureds' means:

    1.    All persons who were, now are, or shall become directors, officers or employees, of the 'company';

    * * *

D.    'Insureds' means the 'company' and the 'individual insureds'.

E.    'Loss' means 'defense costs' and the total amount of monetary damages which the 'insured' becomes legally obligated to pay on account of any 'claim' for a 'wrongful act' with respect to which coverage hereunder applies, including damages, judgments, settlements * * *.

* * *

H.    'Wrongful act' means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted on or after the Retroactive Date, if any, * * * and prior to the end of the 'policy period' by:

    1.    Any of the 'individual insureds' in the discharge of their duties solely in their capacity as a director, officer, or employee of the 'company';

    * * *

-14-

    3.    The 'company'.

(Docket No. 33, Ex. A-1, p. 13-14).

**{¶23}** Part V of the Policy is titled "GENERAL PROVISIONS APPLICABLE TO ALL COVERAGE PARTS FORMING THIS POLICY." Part V, Section I, titled "EXCLUSIONS", provides that

> [Cincinnati Insurance] [is] not liable to pay, indemnify or defend any 'claim':
>
> * * *
>
> K.    Based upon, arising out of, or in consequence of, or in any way involving actual or alleged infringement of copyright, patent, trademark, trade secret, service mark, trade name, or misappropriation of ideas or trade secrets or other intellectual property rights; provided, however, this exclusion shall not apply to any 'claim' against any 'individual insureds';

(*Id*. at p. 27).

### *The Audit Request*

**{¶24}** The Policy's definition of a "claim" includes a "written demand for * * * non-monetary relief." (Docket No. 33, Ex. A-1, p. 13). None of these terms are defined.

**{¶25}** When a term in an insurance policy is undefined, it is given its "plain and ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly intended from the face or overall contents of the instrument."

*Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-46 (1978), citing *First Natl. Bank v. Houtzer*, 96 Ohio St. 404, 406-407 (1917). When an undefined term has a plain and ordinary meaning, it is "unnecessary and impermissible for a court to resort to construction of that language." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995), citing *Karabin v. State Auto. Mut. Ins. Co.,* 10 Ohio St.3d 163, 166-167 (1984). However, "[w]hen interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary." *Wohl v. Swinney*, 118 Ohio St.3d 277, 2008-Ohio-2334, ¶ 22, citing *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 50.

**{¶26}** "Demand" is defined as "[t]he assertion of a legal right or procedural right." *Black's Law Dictionary* 522 (10th Ed.2014).

**{¶27}** "Non" is defined as "[n]ot; no." *Id. at* 1212. "Monetary" is defined as "[o]f, relating to, or involving money." *Id.* at 1158.

**{¶28}** "Relief" is defined as "[t]he redress or benefit, esp. equitable in nature (such as injunction or specific performance), that a party asks of a court. Also termed *remedy."* (Emphasis sic.) *Id*. at 1482. "Remedy" is defined as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." *Id.* at 1485.

**{¶29}** In interpreting "relief" as used herein, we will look to the plain and ordinary meaning of "remedy." This is necessary because if we looked to the plain and ordinary meaning of "relief" then the Policy's second definition of a "claim" ("a civil proceeding commenced by filing of a complaint or similar pleading") would be rendered meaningless and unnecessary, as a civil complaint or similar pleading necessarily requires a party to ask something of a court.

**{¶30}** Here, Cincinnati Insurance argues that the audit request is not a written demand for non-monetary relief because it only advised Eighth Floor that the BSA was investigating possible instances of copyright infringement and gave Eighth Floor an opportunity to conduct its own company-wide investigation to determine whether any copyright infringement had occurred. It maintains that "Eighth Floor's investigation would not provide redress or benefit to the BSA, particularly if no copyright infringement was found." Appellee's Brief, p. 15-16.

**{¶31}** In support, Cincinnati Insurance relies on the first sentence of the audit request which provides, "[Troutman Sanders] represents [the BSA] in connection with its investigation of *possible instances* of illegal duplication of certain software companies' proprietary software products." (Emphasis added). (Docket No. 35, Ex. 4, p. 1). While this sentence, standing alone, could support Cincinnati Insurance's argument, the rest of the audit request does not.

{¶32} The second paragraph of the audit request states, "We have recently been advised that [Eighth Floor] *has* installed on its computers more copies of [19 software programs] than it is licensed to use." (Emphasis added.) (*Id.*). The audit request does not state that the BSA was advised that Eighth Floor *may* have installed on its computers more copies of the programs than it was licensed to use.

{¶33} The fourth paragraph of the audit request states, "However, [the] BSA member companies have determined that litigation may not be necessary in this case, especially as senior management may not have had an opportunity to investigate or consider *the ramifications of using unlicensed software*." (Emphasis added.) (*Id*. at p. 1-2). The audit request does not state that senior management may not have had an opportunity to investigate or consider *whether* Eighth Floor had committed copyright violations.

{¶34} And to the extent that the word "investigate" could be read broadly, the final paragraph of the audit request states, "The software programs installed on Eighth Floor's computers *are* evidence and therefore must be preserved in case this matter does proceed to litigation." (Emphasis added.) (*Id*. at p. 2). The audit request does not state that the software programs installed on Eighth Floor's computers *may* be evidence.

**{¶35}** Thus, contrary to Cincinnati Insurance's claim, the audit request sought to determine the extent of Eighth Floor's copyright violations—not whether Eighth Floor had committed copyright violations.

**{¶36}** That being said, although the audit request gave Eighth Floor the "opportunity" to conduct a company-wide software audit, it implied that if Eighth Floor did not take up this "opportunity," then the matter would proceed to litigation, where the BSA could have achieved the same result. The audit request also sought the preservation of evidence and stated that Willis should not attempt to purchase any software from sales representative of these companies until the matter was resolved.

**{¶37}** These measures were the BSA's "means of enforcing a right" and "preventing a wrong" within the plain and ordinary meaning of "remedy." *See Gold Tip, LLC v. Carolina Cas. Ins. Co.*, D. Utah No. 2:11-CV-00765-BSJ, 2012 WL 3638538, *4 (Aug. 23, 2012) (a written demand for non-monetary relief can encompass a letter that coerces conduct of the policyholder through the threat of using the legal process to compel that conduct.).

**{¶38}** For these reasons, we find that the audit request was a "claim" within the meaning of the Policy.

*The Settlement Offer*

**{¶39}** Unlike the audit request, the parties do not dispute that the settlement offer was a "claim" under the Policy. The parties do dispute whether coverage was excluded under Exclusion K of the Policy.

**{¶40}** An insurer's duty to defend is broader than the duty to indemnify. *Ohio Govt. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 2007-Ohio-4948, ¶ 19, citing *Socony-Vacuum Oil Co. v. Continental Cas. Co.*, 144 Ohio St. 382 (1945). The duty of an insurance company to defend an action against an insured is determined by the scope of the allegations of the claim. *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41 (1973), paragraph two of the syllabus. "[W]here the complaint brings the action within the coverage of the policy, the insurer is required to make the defense, regardless of the ultimate outcome of the action or its liability to the insured." *Id.* "[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage * * * the insurer must accept defense of the claim." *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180 (1984). "Only if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action." *Erie Ins. Exchange v. Colony Dev. Corp.*, 136 Ohio App.3d 406, 413 (1999), citing *Wedge Products, Inc. v. Hartford Equity Sales Co.*, 31 Ohio St.3d 65 (1987).

{¶41} However, where an insurance contract excludes coverage for the claim against the insured, no duty to defend will arise. *Zanco v. Michigan Mut. Ins. Co.*, 11 Ohio St.3d 114, 116 (1984). In such cases, there is no duty to defend because the allegations in the pleadings fall squarely within an area of activity specifically excluded from coverage. *Id.*

{¶42} The duty of the insurance company to defend is separate from the duty of the insurance company to indemnify. *Motorist Mut. Ins.* at paragraph one of the syllabus. Once a duty to defend is recognized, "speculation about the insurer's ultimate obligation to indemnify is premature until facts excluding coverage are revealed during the defense of the litigation and the insurer timely reserves its rights to deny coverage." *Erie Ins. Exchange* at 413, citing *Motorists Mut. Ins*.

{¶43} "One who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss." *Chicago Title Ins. Co. v. Huntington Natl. Bank,* 87 Ohio St.3d 270, 273 (1999), citing *Inland Rivers Service Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32 (1981). However, when an insurer denies coverage under a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion. *Continental Ins. Co. v. Louis Marx & Co.*, 64 Ohio St.2d 399, 401 (1980).

{¶44} Furthermore, "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.)

*Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992),

citing *Moorman v. Prudential Ins. Co.*, 4 Ohio St.3d 20, 21 (1983). "The insurer,

being the one who selects the language in the contract, must be specific in its use;

an exclusion from liability must be clear and exact in order to be given effect." *Lane*

*v. Grange Mut. Cos.*, 45 Ohio St.3d 63, 65 (1989), citing *Am. Fin. Corp. v.*

*Fireman's Fund Ins. Co.*, 15 Ohio St.2d 171 (1968).

{¶45} Here, Eighth Floor does not dispute the fact that the settlement offer

did not make a written demand for monetary relief against its offices or directors or

contain any language that could potentially or arguably be construed as a written

demand for monetary (or non-monetary) relief against its officers and directors. It

argues instead that the settlement offer is potentially or arguably a "claim" against

its officers and directors insofar as its officers and directors could have been liable

for copyright infringement if the BSA had filed suit against it. It explains,

> Vicarious 'liability for copyright infringement may be imposed upon
> an officer, directors, or shareholder so long as [1] the individual 'has
> the right and ability to supervise the infringing activity' and also [2]
> has a direct financial interest in such activities. *Jobete Music Co., Inc.*
> *v. Media Broad. Corp.*, 713 F.Supp. 174, 177-78 (M.D.N.C. 1988).
> As such, the Eighth Floor [o]fficers and [d]irectors were jointly and
> severally liable on [the] BSA's claim. As [o]fficers and [d]irectors,
> they necessarily had the right and ability to supervise the infringing
> activity and as shareholders in a closely held corporation, the
> [o]fficers and [d]irectors had a direct financial interest in such
> infringement.[1]

---

[1] Eighth Floor's officers and directors do not actually own stock in the company. "The companies that do hold that stock, Renoir Visions and Degonda Corporation, are owned in whole or in part by Eighth's Floor's Board of Directors * * *." Appellant's Reply Brief, p. 2-3.

> Had the matter not settled, the BSA would have named the [o]fficers and [d]irectors in its [c]omplaint because Eighth Floor was not solvent to the full extent of the potential damages. Because copyright infringement allows for joint and several liability, because the BSA was aware that Eighth Floor was closely held, and because the [d]irectors and [o]fficers constituted a viable source of recovery who necessarily shared equally in the liability, any lawyer drafting the [c]omplaint would be obligated to include the [d]irectors and [o]fficers as [d]efendants. Indeed, [the] BSA would be motivated to name as many parties as possible to ensure that it would collect on its judgment.

Appellant's Reply Brief, p. 8-9.

{¶46} In support, Eighth Floor points to the Ohio Supreme Court's decision in *Willoughby Hills* where the court found that "[w]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is *potentially or arguably* within the policy coverage * * * the insurer must accept defense of the claim." (Emphasis added.) 9 Ohio St.3d at 180. In doing so, the court noted the reasoning of the Seventh Circuit Court of Appeals, " '[S]ince the advent of notice pleading, in a case where there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, the insurer must defend, and its defense obligations will continue until such time as the claim against the insured is confined to a recovery that the policy does not cover.' " *Id*. at p. 179, quoting *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1185 (7th Cir.1980).

{¶47} We do not believe that *Willoughby Hills* stands for the proposition that an insurer has a duty to defend an otherwise excluded "claim" where the allegations in that "claim" could potentially or arguably lead to *another* "claim" which may be within the policy's coverage. Indeed, Eighth Floor cites no case law indicating that its officers and directors would have definitely been liable for copyright infringement if the BSA had filed suit against it.

{¶48} The only real "claim" at issue here is the settlement offer which did not demand any monetary relief from Eighth Floor's officers or directors or contain any language that could potentially or arguably be construed as a written demand for monetary (or non-monetary) relief against Eighth Floor's officers and directors. It included a provision offering to release Eighth Floor's officers and directors from liability if Eighth Floor complied with its demands, but this provision cannot potentially or arguably be construed as a written demand for monetary (or non-monetary) relief against Eighth Floor's officers and directors

{¶49} For these reasons, we find that the settlement offer was excluded from coverage under Exclusion K of the Policy.

{¶50} Accordingly, because the trial court erred in finding that the audit request was not a "claim" under the Policy, but did not err in finding that the settlement offer was excluded from coverage under Exclusion K of the Policy, Eighth Floor's assignment of error is sustained, in part, and overruled, in part.

Because the trial court incorrectly determined that the audit request was not a "claim," it did not determine whether that claim gave rise to duty to defend or whether coverage was excluded under Exclusion K of the Policy. Therefore, the matter must be remanded to the trial court for resolution of these issues.

{¶51} Having found error prejudicial to the appellant, in some of the particulars assigned and argued, we affirm, in part, and reverse, in part, the judgment of the trial court, and remand the matter for further proceedings consistent with this opinion.

*Judgment Affirmed in part,*
*Reversed in Part and*
*Cause Remanded*

**SHAW, P.J. and PRESTON, J., concur.**
**/jlr**